**UNITED STATES, Appellee,**

v.

**Sergeant Carl A. SNODGRASS, 231–68–6901, United States Army, Appellant.**

**CM 447962.**

U.S. Army Court of Military Review.

25 July 1986.

---

For Appellant: Captain Stephanie C. Spahn, JAGC (argued); Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC (on brief).

For Appellee: Captain Patrick A. Hewitt, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC (on brief).

Before WATKINS, LYMBURNER and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

SMITH, Judge:

Appellant was tried by a military judge sitting as a general court-martial at Fort Sill, Oklahoma. He was convicted, in accordance with his pleas, of sodomy with a child under the age of 16 and indecent acts with a child under the age of 16, in violation of Articles 125 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 925 and 934 (1982), respectively. He was sentenced to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E–1. The convening authority approved the sentence, but ordered the execution of confinement in excess of 90 months suspended for 90 months.

The appellant alleges, *inter alia,* that the military judge erred by failing to advise him of a statute of limitation issue relating to Charge II, and by failing to secure his affirmative waiver or exercise of that defense; that the military judge erred by allowing improper and prejudicial opinion evidence to be admitted during sentencing; and that the pretrial agreement provision concerning suspension of confinement is void as a matter of public policy and Army regulation.

■ We agree with appellant that he was improperly tried for acts allegedly oc-

curring between 20 June 1983 and 27 August 1983, because any offenses during this period were committed more than two years before receipt of the sworn charges by the summary court-martial authority in this case. The military judge should have secured an affirmative waiver or exercise of the statute of limitation defense. *See* Article 43(c), UCMJ 10 U.S.C. § 843(c); Rule for Courts-Martial [R.C.M.] 907(b)(2)(B). We will correct the error in our decretal paragraph.

## I

■ During the sentencing portion of the trial, the military judge allowed the Government to present the testimony of an expert witness in the field of child sexual abuse and treatment. Prior to the expert's testimony, the defense counsel objected on the basis that the expert (Ms. Erdelyi) lacked the personal knowledge of the victim (appellant's daughter M) necessary to testify about the effect of appellant's crimes on the victim. The record reflects that Ms. Erdelyi had extensive education and experience in the field of child sexual abuse and in treating child sex abuse victims (including adults who had been victimized as children). She was familiar with the facts of the case, having read an extensive Stipulation of Facts and the comprehensive sworn statements (allied papers) by appellant, his daughter, M, and his son, J; however, she had never spoken to or personally observed the victim. The military judge ruled as follows:

> I will say that I will allow any testimony regarding her opinions of the effect that these acts may have had on this particular victim, considering it and giving it such weight as it deserves based on what she bases her opinion on. Now, I will sustain the objection as to the effects of such types of acts in general on children. If she has an opinion based on her reading of the testimony in this case and things as to what effect these acts might have on this particular alleged victim, I will allow that, but I am not going to allow a general dissertation of the effects of sexual abuse on just the child

population of the United States or any particular sampling.

On direct examination Ms. Erdelyi answered two questions reflecting her expert opinion about the likelihood of psychological damage to M:

Q: And what is that opinion.

A: That due to the victimization of this child through the incest pattern, she is most likely to suffer loss of self-esteem, self-degradation and a variety of other problems that I couldn't specifically state she would have but clients generally tend to have over time.

Q: Are these problems likely to persist?

A: Yes. Incest victims tend to look like post-traumatic stress disorder.

DC: Objection, Your Honor. At this point she's talking about other incest victims. If she wants to talk about [M's] progress, that's fine, but in our opinion she's going outside that now and talking about generalized population.

MJ: Yes, please limit your observations to what you feel the effects might be on this particular victim.

A: This particular victim, due to the repeated incest events, is probably highly vigilant and unable to trust because she has had to be watchful at all times, due to the prolonged and often frequent incest experience. She most likely experiences betrayal from the father and experiences estrangement from the mother because there was no, as I understand it, intervention or protection from that mother, according to what I have read.

TC: No further questions, Your Honor.

Appellant asserts that the witness was merely speculating about the possible impact of the crime on the victim and that her basis of knowledge was void of any credible contact with the object of her analysis—the victim. Appellant cites several

cases as illustrative of the type of data reasonably relied upon by experts. *See United States v. Snipes,* 18 M.J. 172 (C.M. A.1984) (expert witnesses, who had all directly assisted the victim of familial sexual abuse, were allowed to compare the victim's behavior with the typical behavior of sexually abused children); *United States v. Hammond,* 17 M.J. 218 (C.M.A.1984) (government expert witness, who had observed the victim testify in court and had read the stipulation of fact, was allowed to make some general conclusions about the effect of the rape on the victim). Appellant also points out that the witness did not base her opinion upon reports of other technicians and doctors who had treated the victim. *See generally United States v. Allen,* 7 M.J. 345 (C.M.A.1979); *United States v. Lawson,* 653 F.2d 299 (7th Cir. 1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982).

We find that, under the facts of this case, the military judge did not err in determining the opinion testimony was admissible under R.C.M. 1001(b)(4) and Military Rule of Evidence 702. *Cf. United States v. Mustafa,* 22 M.J. 165, 168 (C.M.A.1986) (it is within the discretion of the military judge whether the subject of the expert's proffered testimony would be of assistance to the fact-finder and whether the expert could competently provide such evidence). The military judge properly limited the scope of the expert's testimony, and clearly indicated that he would weigh the evidence "on what she bases her opinion on."

## II

■ Appellant offered to plead guilty in his pretrial agreement in return for the convening authority's promise "to suspend any confinement in excess of 90 months, for a period of 90 months." He now contends that such a lengthy period of suspension is void as being contrary to public policy and in violation of Army regulation and the Rules for Courts-Martial.

Rule for Courts-Martial 1108(d) states that a period of suspension shall not be unreasonably long, and that the Secretary concerned may further limit by regulation the period for which the execution of a sentence to confinement may be suspended. The Secretary of the Army, pursuant to R.C.M. 1108(d), has set out guidelines on the subject of suspension of sentences. Army Regulation 27–10, Legal Services: Military Justice, para. 5–29 (1 July 1984) [AR 27–10], states in part:

5–29. Suspension of sentence.

a. Authority to suspend the execution of a sentence is set forth in R.C.M. 1108(b).

b. No sentence may be suspended beyond a reasonable period (R.C.M. 1108(d)). A reasonable period of suspension shall be calculated from the date of the order announcing the suspension and shall not extend beyond—

. . . .

(4) Two years or the period of any unexecuted portion of confinement, whichever is longer, for a GCM.

The validity of appellant's assertion rests upon the interpretation of the phrases "unexecuted portion of confinement" in AR 27–10, paragraph 5–29b(4), and "unreasonably long" as found in R.C.M. 1108(d). When a convening authority orders a sentence or portion thereof executed, he is ordering the approved terms of the sentence to be carried out. *See generally* Articles 58(a) and 71, UCMJ, 10 U.S.C. §§ 858(a), 871; R.C.M. 1113, *Discussion.* The term "executed," as it applies to *confinement,* is properly defined as "carried out." When modified, as it is in the promulgating order in this case with the words "will be," the clear meaning is that the confinement "will be carried out." Therefore, we find that confinement is executed (carried out) as it is served and that the "unexecuted portion" of confinement is that approved period of confinement not yet served. In our interpretation of these terms, we have considered other provisions of the UCMJ and the Rules for Courts-Martial, so as to ensure our interpretation of the phrase "unexecuted portion of confinement" can be applied in a consistent and practicable manner. *See* Articles 72(b) and

74(a), UCMJ, 10 U.S.C. §§ 872(b), 874(a); R.C.M. 1108(a), 1108(b), 1201(c), and 1206(b)(1). *Cf.* R.C.M. 1210(h)(6).

In this case the convening authority approved the adjudged confinement term of 10 years (120 months). Consistent with the terms of the pretrial agreement, he ordered executed 90 months of confinement, suspended execution of 30 months of confinement, and established a probationary period of 90 months for the suspended 30 months of confinement. The "unexecuted portion of confinement", in AR 27–10, paragraph 5–29b(4), includes both portions of the approved sentence—90 months, the portion ordered executed (to be carried out), and 30 months, the portion suspended during the stated probation period. On the date of the action in this case the suspension period did not extend beyond the unexecuted portion of the confinement; therefore, the suspension period was in conformity with AR 27–10, paragraph 5–29b(4). *But see United States v. Robertson,* 21 M.J. 1005, 1006 (A.C.M.R.1986) (the Secretary of the Army has limited periods of suspension of the execution of a court-martial sentence to no longer than two years).

After careful consideration we also find the period of suspension in this case, which places appellant on probation for the entire period of his confinement, is reasonable as a control and motivating measure and is not violative of public policy or R.C.M. 1108(d).

We have considered the other errors raised by appellant and find them to be without merit.

The Court affirms only so much of the approved finding of guilty of the Specification of Charge II, with respect to dates, as finds that the offense was committed from on or about 27 August 1983 until on or about January 1985. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the sentence is affirmed.

Senior Judge WATKINS and Judge LYMBURNER concur.