# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

### Leo J. JAMES,
### Fireman (E-3), U.S. Coast Guard

### CGCMS 24321

### Docket No.  1246

### 25 September 2006

Special Court-Martial convened by Commander, Coast Guard Activities New York.  Tried at New York, New York, on 16 February 2005.

| | |
|---|---|
| Military Judge: | CDR Elisabeth A. Pepper, USCG |
| Trial Counsel: | LT D. Sean Baer, USCGR |
| Defense Counsel: | LTJG Edward M. Pierce, JAGC, USNR |
| Appellate Defense Counsel: | LT Lynn R. S. Capuano, USCG |
| Assistant Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Donna D. Leoce, USCG |

## BEFORE
## PANEL ONE
## BAUM, KANTOR, & FELICETTI
Appellate Military Judges

FELICETTI, Judge:

Appellant was tried by special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of false official statement, in violation of Article 107, Uniform Code of Military Justice (UCMJ); and one specification of wrongfully using cocaine, a Schedule II controlled substance, and one specification of wrongfully using marijuana, a Schedule II controlled substance, both in violation of Article 112a, UCMJ.  The military judge sentenced Appellant to a bad-conduct discharge, reduction to E-1, forfeiture of $600 pay per month for three months, and confinement for ninety days.  The Convening Authority approved the sentence as adjudged, but

suspended, until 18 April 2006, all confinement in excess of sixty-two days in response to Appellant's clemency request. The pretrial agreement had no effect on the sentence.

Before this Court, Appellant has assigned three errors:

 I. THE MILITARY JUDGE COMMITTED PLAIN ERROR BY ADMITTING AND CONSIDERING IMPROPER EVIDENCE IN AGGRAVATION UNDER R.C.M. 1001(b)(4).

 II. APPELLANT'S PLEA WAS IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ENSURE APPELLANT UNDERSTOOD THE MEANING AND EFFECT OF EACH CONDITION OF HIS PRETRIAL AGREEMENT.

 III. THIS COURT SHOULD CONSIDER THE UNREASONABLE AND UNEXPLAINED POST-TRIAL DELAY IN DETERMINING THE SENTENCE THAT SHOULD BE APPROVED.

Assignment I will be discussed.

Appellant's second assignment is rejected. All suspended portions of the sentence have been remitted, so it is impossible for the Government to invoke the provisions requiring Appellant to cooperate with the Government and refrain from future misconduct. We also find no evidence that Appellant's pleas were adversely affected by unexplained or misleading explanations of the pretrial agreement. Nonetheless, the types of provisions discussed in Assignment of Error II remain a continuing source of concern. *See United States v. Sheehan*, 62 M.J. 568 (C.G.Ct.Crim.App. 2005).

Appellant's third assignment claiming unreasonable and unexplained post-trial delay is also rejected. Appellant has not alleged a due process violation, and we find the delay in this case reasonable in light of the explanation offered by the Staff Judge Advocate. *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F. 2002).

## Facts

The Engineering Petty Officer of the Coast Guard Cutter LINE testified during pre-sentencing on the potential impact on Coast Guard relations with the New York City law enforcement community if this community learned that a LINE crew member was using illegal

2

drugs. It appears from the record that everyone understood Appellant was the hypothetical crewmember, albeit a junior one unqualified to perform any underway watchstanding duties. The defense counsel considered the question proper but successfully objected to the witness answering it based on a lack of foundation. The trial counsel elicited additional testimony from the witness and again asked him to predict the impact. The defense counsel reasserted his objection, and the trial counsel continued asking foundational questions. The defense counsel did not object when, for a third time, the trial counsel asked what would be the impact within the local law enforcement community if one of the LINE's crew was found using illegal drugs. The witness responded: "Throws a stigma on us. It is a trust issue and a violation of that trust." (R. at 159.)

There was no evidence that anyone in the local law enforcement community learned of Appellant's misconduct, either while he was a crewmember of the LINE or after his reassignment to the staff of the Activities New York barracks. However, the trial counsel argued that this community was aware of the offenses and that the predicted damage had occurred. The defense counsel did not object.

### Assignment I

Appellant asserts it was plain error for the military judge to permit the LINE's Executive Petty Officer to offer his opinion about the potential impact on community relations. Instead of applying the plain error standard, we will use the de novo standard of review authorized by Article 66, UCMJ. *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991); *United States v. Olean*, 56 M.J. 594, 598 (C.G.Ct.Crim.App. 2001); *United States v. Conover*, 61 M.J. 681, 683 (C.G.Ct.Crim.App. 2005). We agree it was error to admit the testimony and note the Government's assertion that the improperly admitted evidence had strong probative value. (Br. 6.) Despite this Government concession, our independent review of the record shows that the improper testimony had no impact on the sentence.

The military judge has broad discretion to determine whether Government sentencing evidence will be admitted under Rules for Courts-Martial (R.C.M.) 1001(b)(4), Manual for Courts-Martial, United States (2005 ed.), and in balancing the probative value of the evidence

against the other factors in Military Rule of Evidence (M.R.E.) 403. *United States v. Wilson*, 47 M.J. 152, 155 (C.A.A.F. 1997); *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995). As stated in R.C.M. 1001(b)(4), "[t]he trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Such evidence may include evidence of social or psychological impacts, or cost, to any person or entity who was the victim of the offense and "evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense." R.C.M. 1004(b)(4).

In some cases, moreover, the impacts "directly relating to or resulting from" the offense may not appear to be "direct" as the word is commonly understood. For example, the anxiety experienced by the victim of disrespectful language is an admissible aggravating impact even when the victim only learns of the disrespectful language more than five weeks later from a third person who acts without the accused's knowledge or consent. *Wilson*, 47 M.J. at 157.

However, the military judge's wide discretion to determine whether an aggravating circumstance is "directly related to or resulting from the offenses" is not unlimited. The foundational requirement is a specific harm caused by the accused. *Rust*, 41 M.J. at 478 (*citing Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). The accused, moreover, is not responsible for a never-ending chain of causes and effects. *Id.* (internal citations omitted). There must be some reasonably direct connection between the offense and a negative impact that constitutes an aggravating circumstance. *See United States v. Gordon,* 31 M.J. 30, 36 (C.M.A. 1990).

In this case, there was no such reasonably direct connection, even though the trial defense counsel deemed the question proper. The Government witness offered an opinion on what *would be* the impact *if* the local law enforcement community learned that Appellant was using illegal drugs while he was a member of the LINE's crew. The witness did not testify about an actual impact. Instead, he assumed a fact not in evidence and then offered an opinion about the hypothetical impact. No other evidence was admitted to support the witness's assumption. Therefore, the testimony was outside the scope of R.C.M. 1001(b)(4).

It is true that Appellant's drug offenses created an unquantified risk that the local law enforcement community might learn of the misconduct and, according to the testimony, cause a negative impact. This risk could arguably be characterized as a direct impact under R.C.M. 1001(b)(4). Such an approach in this case, however, would swallow the general rule and render meaningless significant portions of R.C.M. 1001 and the relevant case law. We, therefore, decline to apply this reasoning and hold that this testimony by the Engineering Petty Officer was improper.

## Reassessment of Sentence

In light of the foregoing, we reassess the sentence. In doing so, we may only affirm so much of the sentence as we believe the trial judge would have adjudged in the absence of the error we have found; a rehearing on sentence is required if we are unable to do so. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

We find the error inconsequential. The improperly admitted testimony was of minimal value on its face. The trial defense counsel, moreover, effectively cross-examined the witness, further reducing its impact. We are confident, therefore, that the improper portion of the Engineering Petty Officer's testimony had no impact on the sentence.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed.

Chief Judge BAUM and Judge KANTOR concur.



For the Court,

Jane R. Lim
Clerk of the Court

5