# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Christopher E. OLSEN
### Machinery Technician Third Class (E-4), U.S. Coast Guard

### CGCMG 0366
### Docket No. 1462

### 25 September 2019

General Court-Martial tried on 16 March 2018.

| | |
|---|---|
| Military Judge: | CDR Paul R. Casey, USCG |
| Appellate Defense Counsel: | LCDR Salomee G. Briggs, USCG |
| | Mr. Joseph D. Galli, Esq. |
| | Mr. Matthew J. Flynn, Esq. |
| Appellate Government Counsel: | LCDR Stephen Miros, USCG |
| | LT Zachary N. Godsey, USCG |

## BEFORE
## McCLELLAND, BRUCE & BRUBAKER
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of one specification of attempting to violate a lawful general order and three specifications of violating a lawful general order, in violation of Articles 80 and 92, Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to confinement for ninety days, reduction to E-1, and a bad-conduct discharge. Although there was a pretrial agreement, it did not affect the sentence and the Convening Authority approved the sentence as adjudged.

Before us, Appellant asserts that: (1) Charge I (attempted violation of a general order) and Charge II (violation of a general order) are multiplicious; (2) all charges and specifications

constitute an unreasonable multiplication of charges; (3) the military judge erred by admitting improper sentencing evidence; and (4) the sentence is inappropriately severe. We address each but we find no prejudicial error and affirm.

## Factual Background

Appellant used his government computer numerous times from about 16 November 2015 to about 29 June 2016 to view approximately 200 sexually explicit images and videos. In addition to those times, Appellant made numerous attempts from on or about 6 June 2016 to on or about 29 June 2016 to view other pornography on his government computer, but was thwarted by Coast Guard filters and firewalls. He tried to use the "dark web"[1] to further his efforts: "[A]fter being blocked, instead of ceasing his attempts to view sexually explicit or predominantly sexually oriented images on a Coast Guard workstation, he tried to use a Tor2web program to mask his search efforts and circumvent Coast Guard cybersecurity protocols and view pornography on a Coast Guard workstation."[2]

Appellant stipulated for sentencing purposes that "he made numerous internet searches on the Coast Guard workstation computer" using "search terms consistent with child exploitative material."[3] As a result, he "accessed hundreds of photos of girls who appeared to be under the age of 18, suggestively posed wearing underwear and/or bathing suits."[4] He also accessed a file-sharing website that was unrecognized by Coast Guard filters or firewalls, which he used to search for and access two videos showing multiple naked girls, many of whose genitalia were visible.

Appellant entered a pretrial agreement where, *inter alia*, he agreed to plead guilty to a specification of attempted violation of a lawful general order governing Coast Guard computers and three specifications of violation of the order. In exchange, the Convening Authority agreed,

---

[1] "The part of the World Wide Web that is only accessible by means of special software, allowing users and website operators to remain anonymous or untraceable." Lexico, http://lexico.com/en/definition/dark_web (last visited 22 Aug 19).

[2] Prosecution Ex. 1 at 2.

[3] Prosecution Ex. 2 at 1.

[4] *Id.*

*inter alia*, to withdraw, upon acceptance of the pleas, three child pornography specifications and to disapprove all confinement in excess of eighteen months.

## Multiplicity

*Standard of Review*

An accused who pleads guilty unconditionally to multiple specifications relinquishes his entitlement to challenge them for multiplicity unless he can show they are "facially duplicative" of one another. *United States v. Broce*, 488 U.S. 563, 575 (1989); *United States v. Campbell*, 68 M.J. 217, 219 (C.A.A.F. 2009). Whether specifications are facially duplicative is a question of law that we review *de novo*. *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). "Offenses are 'facially duplicative' if, on the face of the guilty plea record, it is apparent that the multiple convictions offend the Double Jeopardy Clause[5] because admission to one offense cannot 'conceivably be construed' as amounting to more than a redundant admission to another." *United States v. Hernandez*, 78 M.J. 643, 645 (C.G.Ct.Crim.App. 2018) (quoting *Broce*, 488 U.S. at 576).

Appellant contends that although he pleaded guilty unconditionally, he is entitled to *de novo* review of multiplicity because the military judge, *sua sponte*, raised and addressed multiplicity. We do not believe that a military judge ensuring he is satisfied that an accused is admitting guilt to separate offenses alters the impact of an unconditional guilty plea on subsequent multiplicity claims. *See Campbell*, 68 M.J. at 219 ("By pleading guilty, an accused does more than admit that he did the various acts alleged in a specification; 'he is admitting guilt of a substantive crime.' *United States v. Broce*, 488 U.S. 563, 570 (1989). 'Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does [an accused] who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes.' *Id.*"). Nothing about the military judge's inquiry and discussion about multiplicity undermined the providence of Appellant's unconditional guilty pleas. Appellant is correct that we conduct a *de novo* review, but it is constrained to whether the specifications are facially duplicative.

---

[5] U.S. Const. amend. V.

*Tests for Multiplicity*

In determining whether the specifications are facially duplicative, we consider two types of multiplicity, each with its own corresponding test. The first is single-act/multiple-statutes multiplicity "where the same act or transaction constitutes a violation of two distinct statutory provisions." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The test for this type of multiplicity is "whether each provision requires proof of a fact which the other does not." *Id.*; *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

The second type is multiple-acts/single-statute multiplicity where "charges for multiple violations *of the same statute* are predicated on arguably the same criminal conduct." *United States v. Forrester*, 76 M.J. 479, 485 (C.A.A.F. 2017) (internal quotation marks and citation omitted) (emphasis in original). For this type of multiplicity, we assess the statute's "allowable unit of prosecution" to determine whether it prohibits each individual act or a continuous course of conduct, even when comprised of multiple acts. *Id.*

*Application*

Appellant contends that under either test, the specifications are facially duplicative. We disagree.

Appellant pleaded guilty to one specification of attempting to violate an order under Article 80, UCMJ, and another of violating the same order under Article 92, UCMJ. Though there is some time overlap between the two specifications, the record is clear that the Article 80 specification encapsulates occasions that Appellant tried to, *but did not successfully*, view pornography on his government computer, while the Article 92 specifications encapsulate separate occasions that Appellant tried *and successfully* viewed pornography on his government computer. The factual component of each specification is thus not the same, *cf. United States v. Lloyd*, 46 M.J. 19, 24 (C.A.A.F. 1997), distinguishing this case from lesser-included-offense cases cited by Appellant. *See United States v. Arriaga*, 70 M.J. 51, 54 (C.A.A.F. 2011); *United States v. Jones*, 68 M.J. 465, 470 (C.A.A.F. 2010). Because they are not factually the same, the convictions do not amount to single-act/multiple-statutes multiplicity.

Turning to multiple-acts/single-statute multiplicity, the main problem, of course, is that Appellant's two violations are not of a single statute, but of the distinct statutory provisions found in Articles 80 and 92, UCMJ. Appellant nonetheless posits that even when there are two separate alleged acts—one that fails and one that succeeds—the attempt should be considered the same as the completed substantive offense for unit-of-prosecution analysis. This argument is novel, but unnecessary for us to decide here because even if we ignore the two-statutes problem, Appellant fails to show that the specifications are facially duplicative.

Appellant looks to our decision in *Hernandez* for support, but that was a different scenario. There, we concluded that three admitted-to offensive touchings were, on the face of the guilty plea record, so unified in time, circumstance, and impulse that, under Article 128 jurisprudence, they comprised a single unit of prosecution. *Hernandez*, 78 M.J. at 647. Here, first, we are not addressing Article 128's unit of prosecution, and second, Appellant admitted he violated a general order "numerous times from on or about 16 November 2015 to on or about 29 June 2016"[6] by using his government computer to view a total of approximately 200 sexually explicit images and videos. In addition to these successful searches, he admitted he committed the separate offense of attempted violation of the order when, "on numerous occasions"[7] from on or about 6 June 2016 to on or about 29 June 2016, he attempted to view pornography on his government computer but was thwarted by filters and firewalls. Under these circumstances, Appellant's unsuccessful attempts to view pornography, charged under Article 80, UCMJ, *can* "conceivably be construed," *Broce*, 488 U.S. at 576, as comprising separate units of prosecution from his actual viewing of pornography charged under Article 92, UCMJ. Thus, under either test, the specifications are not facially duplicative.

### Unreasonable Multiplication of Charges

Appellant asserts that the military judge, after raising unreasonable multiplication of charges himself, erred when he concluded that the charges and specifications were not unreasonably multiplied. We review the military judge's ruling for an abuse of discretion. *Pauling*, 60 M.J. at 95.

---

[6] Prosecution Ex. 1 at 3.
[7] *Id.* at 2.

The prohibition against unreasonable multiplication of charges is codified in Rule for Courts-Martial (R.C.M.) 307(c)(4), Manual for Courts–Martial (M.C.M.), United States (2016 ed.)[8]: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." We consider the following non-exhaustive list of factors when determining if the Government has unreasonably multiplied charges:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;

(2) Is each charge and specification aimed at distinctly separate criminal acts?;

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Does the number of charges and specifications unfairly increase the appellant's punitive exposure?; and

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001)

We view the first factor as tilting toward Appellant. Although nothing in the pretrial agreement precluded it, his counsel appeared to avoid an outright motion or objection. He instead prodded the military judge to consider the issue, which the military judge did. Appellant then articulated his position that the charges and specifications were unreasonably multiplied.

The remaining factors, however, weigh in the Government's favor. We have already concluded that the specification alleging failed attempts to violate the general order was aimed at distinctly separate criminal acts from the specifications alleging completed violations of the order. For the three completed-violation specifications, each targeted different dates when Appellant used his government computer to view sexually explicit materials. Each time Appellant chose to use his government computer to view or attempt to view sexually explicit material comprised a separate criminal act. The total of four specifications consolidating the numerous times he did so neither exaggerated his criminality nor unfairly increased his punitive

---

[8] The M.C.M. provisions cited in this opinion are identical in the 2016 and 2019 editions.

exposure. Finally, there is no evidence of prosecutorial overreaching or abuse. The Government was reasonable in charging Appellant's attempts, which fall under a different article, separately. And instead of charging each attempted or completed misuse of his computer as a separate specification as they could have, the Government narrowed the number of specifications considerably by charging divers occasions in each. We conclude the military judge did not abuse his discretion.

## Sentencing Evidence

Appellant contends—and the Government concedes—that the military judge erred by allowing testimony that accessing or attempting to access the dark web causes the Coast Guard, Department of Homeland Security (DHS), and Department of Defense (DoD) computer networks to be vulnerable to outside intrusion. Despite the Government concession, we conclude that Appellant forfeited this objection and fails to show plain error.

*Factual Background*

During pre-sentencing, the Government called Information Systems Technician Chief (ITC) V.V., who by the time of trial was the Chief of the Cyber Protection Team, Coast Guard Cyber Command. At the time of Appellant's offenses, he was an analyst and incident responder assigned to the Cyber Security Operations Center. It was he who discovered Appellant's illicit computer activity while seeking indicators of compromises to the Coast Guard network by users accessing or attempting to access the dark web from a Coast Guard workstation.

When trial counsel asked why the Coast Guard is concerned about people accessing or attempting to access the dark web from a Coast Guard workstation, ITC V.V. responded that "it opens up a gateway to the rest of the Internet. It circumvents all the security appliances, the whole stack." (R. at 111.) He explained that it exposes the Coast Guard network to "numerous threats" such as viruses, malware, and hackers trying to get access to the Coast Guard network. (R. at 112.) Because they are linked, this "could potentially allow whoever was on the outside full blown access" into the networks of not only the Coast Guard, but DHS and DoD as well. *Id.*

Trial counsel then asked what type of harm someone could do if malware were introduced into the system that allowed them unauthorized access. ITC V.V. responded with a list of specific actions a bad actor could take, such as another nation getting "valuable information that they can sell out. They can take full blown control of our system, give it out to somewhere else. They can exfiltrate data. They can - -" (R. at 113.) Only then did trial defense counsel interject: "I am going to have to object at this point, speculation and also improper evidence in aggravation. I believe we are outside of the direct link between our client's actions and the hypotheticals of what could happen with malware or whatever he is testifying to." (R. at 113–114). The military judge overruled the objection. The trial counsel did not return to the line of questioning other than to elicit that ITC V.V. was not aware of any actual damage resulting from Appellant's attempt to access the dark web because it was not his job to assess such damage.

*Law*

When evidence is admitted over objection, we review for an abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)). When, on the other hand, an accused challenges evidence admitted without objection, he or she must demonstrate plain error, that is: (1) that there was error; (2) that the error was plain or obvious; and (3) that the error resulted in material prejudice to a substantial right. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007).

The parties seem to misapprehend that evidence in aggravation must be of actual harm already inflicted, but this is not so for two reasons. First, R.C.M. 1001(b)(4) allows not only evidence of aggravating circumstances directly "*resulting from* the offenses of which the accused has been found guilty," but those "directly *relating to*" them. (Emphasis added.) "The meaning of 'directly related' under R.C.M. 1001(b)(4) is a function of both what evidence can be considered and how strong a connection that evidence must have to the offenses of which the accused has been convicted." *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007).

Evidence can be admissible under the "related to" prong as *res gestae* when it directly explains the crime itself or the circumstances under which it was committed. *See United States v. Metz*, 34 M.J. 349, 351–52 (C.M.A.1992) (holding that uncharged conduct was admissible as "part of the *res gestae*" of the crime and noting, "*Res gestae* evidence is vitally important in many trials.").

So, for example, in *United States v. Jones*, 44 M.J. 103 (C.A.A.F. 1996), the Court concluded that evidence that the accused knew he was HIV positive directly related to his conviction for adultery—despite no evidence that his actions resulted in anyone else actually contracting HIV. *Id.* at 104. The Court characterized the evidence as "essential" for the sentencing authority to understand "the circumstances surrounding that offense or its repercussions" and stated, "Subjecting the victim to the *risk* of a fatal disease more than justifies the decision of the military judge to consider evidence of appellant's condition." *Id.* at 104–105 (citing *United States v. Irwin,* 42 M.J. 479, 483 (C.A.A.F. 1995); *United States v. Vickers,* 13 M.J. 403, 406 (C.M.A. 1982)) (emphasis added).

The second reason is that although evidence "resulting from" an offense must show a "specific harm" caused by the accused, *Payne v. Tennessee,* 501 U.S. 808, 825 (1991), we and other military Courts have interpreted that phrase to include not only harm already inflicted but the *risk* that harm *may* occur. For instance, in *Marchand*, where the accused had been convicted of viewing child pornography, we held it was not error to admit expert testimony that children subjected to such abuse were more likely to develop behavioral and psychological problems. *United States v. Marchand*, 56 M.J. 630, 632 (C.G.Ct.Crim.App.2001). Addressing the contention that the evidence established only an increased risk of developing complications as opposed to actual adverse impact, we noted a string of cases where our higher Court as well as sister Courts "concluded that similar expert testimony of increased risk of future damage to identified victims is admissible." *Id.* at 633 (citing *United States v. Stark,* 30 M.J. 328 (C.M.A. 1990); *United States v. Hammond,* 17 M.J. 218 (C.M.A. 1984); *United States v. Hancock,* 38 M.J. 672 (A.F.C.M.R. 1993); *United States v. Snodgrass,* 22 M.J. 866 (A.C.M.R. 1986)). The rule for admitting evidence in aggravation, we concluded, "permits such expert testimony related to increased risk even though the testimony does not establish that the victim actually

suffers from a particular disorder." *Id*.

The United States Air Force Court of Criminal Appeals considered *Marchand* when deciding *United States v. Anderson*, 60 M.J. 548 (A.F.Ct.Crim.App. 2004), *rev. denied*, 60 M.J. 403 (C.A.A.F. 2004). There, the Court affirmed the military judge's admission of portions of a U.S. Senate report detailing its findings related to child pornography.[9] The excerpt specifically addressed the impact of child pornography on the children involved, particularly the physical and psychological harm that they experience. The Court reasoned that although an aggravating circumstance must directly relate to or result from the accused's offenses, "there is no requirement that the impact be limited to matters that have already occurred." It held:

> The purpose of R.C.M. 1001(b)(4) is to provide the sentencing authority with information about the consequences and repercussions of an accused's offenses in order that a proper sentence can be discerned. The increased predictable risk that child pornography victims may develop psychological or behavioral problems is precisely the kind of information the sentencing authority needs to fulfill that function.

*Id*. at 556.

The parties nonetheless appear to read our later decision in *United States v. James*, 64 M.J. 514 (C.G.Ct.Crim.App. 2006) as holding to the contrary: that a harm must have already occurred for evidence of it to be admissible. That is not the holding of *James*. The accused in that case was convicted of illegal use of drugs. The Government, in aggravation, offered a shipboard supervisor's testimony on "the potential impact on Coast Guard relations" with the local law enforcement community if that community learned that a member of the crew was using illegal drugs. *James*, 64 M.J. at 515. We concluded it was error to admit this because there was "no reasonably direct connection" between the offense and the negative impact purported to be an aggravating circumstance. *Id*. at 516. We noted that the witness, rather than testifying to an actual impact, "assumed a fact not in evidence and then offered an opinion about the hypothetical impact. No other evidence was admitted to support the witness's assumption. Therefore, the testimony was outside the scope of R.C.M. 1001(b)(4)." *Id.*

---

[9] In a later case, the Court found error in referencing the same report, but on unrelated grounds. *United States v. Lutes*, 72 M.J. 530 (A.F.Ct.Crim.App. 2013).

We did state there that "[t]he foundational requirement [for admissibility under R.C.M. 1001(b)(4)] is a specific harm caused by the accused." *Id.* (citing *Payne*, 501 U.S. at 825; *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)). That language, however, merely parrots the "specific harm" language of the *Payne* line of cases, which, as we have discussed, has been interpreted to allow evidence of risk of harm, not just harm that has already occurred. *James* was not about whether risk of harm is cognizable, but whether the evidence in that case was too tenuous and hypothetical to meet the "directly resulting from" requirement for admissibility. We continue to adhere to *James*, but it did not purport to, nor should it be read to, overrule our holding in *Marchand* that a risk directly caused by an accused's offenses can be cognizable as a "specific harm."

For either "relating to" or "resulting from" evidence, there are limitations. It must *directly* relate to or result from the offense. This "imposes a higher standard than mere relevance." *Rust*, 41 M.J. at 478. An accused is not "responsible for a never-ending chain of causes and effects." *Id.* (internal quotation marks and citation omitted). And aggravation evidence of either type must pass the balancing test of Military Rule of Evidence 403, MCM, United States (2016 ed.). *Id.*

*Application*

With this backdrop, we turn to whether the military judge erred in admitting testimony from ITC V.V. Appellant specifically avers that ITC V.V.'s testimony that "accessing the dark web could have resulted in [DHS and DoD] computer systems being taken over by a hacker was plainly excessive aggravating evidence." (Appellant's Brief at 21.) This testimony, however, came and went without objection. What Appellant objected to, instead, was that the witness was theorizing on a litany of "hypotheticals of what could happen" once a bad actor gained access to DHS and DoD networks. (R. at 113–14.) He did not move to strike or lodge a broader objection to any previous testimony, including that of which he now complains. We test the unobjected-to testimony for plain error while we test the objected-to testimony for abuse of discretion.

Regarding the unobjected-to testimony, Appellant fails to demonstrate any error, let alone plain or obvious error.[10]  Appellant stipulated that as part of his efforts to view sexually explicit materials on his government computer, he attempted to gain access to the dark web.  Evidence of this and what it meant were thus *res gestae* and admissible as a circumstance directly related to the offenses.  As Appellant himself stipulated, the evidence manifested his state of mind and the lengths to which he was willing to go in attempting to view further pornography on his computer.

The explanation by a Coast Guard information technology expert—that the means by which Appellant committed the offense of attempted orders violations itself could have created an opening for intruders to enter the Coast Guard network, and that the Coast Guard network is connected to the DHS and DoD networks, creating vulnerabilities for them as well—was helpful to the military judge to understand direct circumstances of Appellant's offenses.  Unlike the hypothetical and attenuated evidence in *James*, the risk of incursion was a circumstance directly related to how Appellant attempted to violate the order.  It thus was admissible despite there being no evidence that such an incursion occurred.

Regarding the objected-to testimony, as ITC V.V.'s testimony moved from a generalized risk of unauthorized access to government networks to a list of specific potential evils a bad actor might inflict once inside the network, it became less *directly* related to Appellant's offenses and its probative value decreased while the danger of unfair prejudice and confusion of the issues increased.  But we need not determine whether the military judge erred by failing to sustain the objection because we conclude that even if he did, Appellant suffered no prejudice.

*Prejudice*

An erroneous admission or exclusion of sentencing evidence is prejudicial "if the error substantially influenced the adjudged sentence."  *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005).  Particularly with a military judge as sentencing authority, we conclude that *any* evidence about Appellant's attempt to access the dark web—let alone the brief testimony objected to—had limited, if any, influence on the sentence.  This evidence was insubstantial

---

[10] He also fails to show prejudice, as we discuss in the "Prejudice" section below.

compared to the far more aggravating evidence of the long period over which Appellant repeatedly violated a general order and the nature of the materials Appellant searched for and viewed at his government workstation, which we discuss further below.

## Sentence Appropriateness

Appellant asserts that his sentence is unduly severe. We review sentence appropriateness *de novo*. Article 66(c), UCMJ; *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy,* 26 M.J. 394, 395 (C.M.A. 1988). This requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982) (internal quotation marks and citations omitted). Courts of Criminal Appeals enjoy broad discretion in determining whether a particular sentence is appropriate but are not authorized to grant what amounts to clemency. *Healy,* 26 M.J. at 396.

The approved sentence of confinement for ninety days, reduction to E-1, and a bad-conduct discharge is appropriate under the circumstances. This was not just a case of violating an order through incidental misuse of a government computer. Appellant repeatedly used his government computer in his workplace to search for and view pornography as well as images and videos that were sexually exploitative of children. When thwarted by firewalls and filters, he was persistent and made efforts to get around them. He entered a favorable agreement that avoided any child pornography charges and limited confinement to eighteen months, but he expressly stipulated to the admissibility in sentencing of evidence that he targeted materials that were sexually exploitative of children. The evidence lays bare the disturbing nature and the full extent of his government computer misuse. The sentence is appropriate for this offender and his offenses.

## Promulgating Order

The promulgating order reflects that the charges and specifications to which Appellant pleaded not guilty were withdrawn. This is incorrect; although the pretrial agreement provided

for withdrawal and later dismissal of those specifications, the military judge actually found Appellant not guilty of them. We direct corrective action in our decretal paragraph.

### Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed. The promulgating order shall be corrected to accurately reflect the disposition of all charges and specifications.

Chief Judge McCLELLAND and Judge BRUCE concur.



For the Court,


Sarah P. Valdes
Clerk of the Court