# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Evan K. GOODELL
### Seaman Recruit (E-1), U.S. Coast Guard

### CGCMG 0370
### Docket No. 1466

### 13 March 2020

General court-martial tried on 7 September 2018.

| | |
|---|---|
| Military Judge: | CDR Hayes Larson, JAGC USN |
| Appellate Defense Counsel: | LCDR Benjamin M. Robinson, USCG |
| | LT Carolyn M. Bray, USCG |
| Appellate Government Counsel: | CAPT Vasilios Tasikas, USCG |
| | LCDR Stephen R. Miros, USCG |
| | LT Nicholas J. Hathaway, USCG |
| | Mr. Stephen P. McCleary, Esq. |

## BEFORE
## McCLELLAND, JUDGE & BRUBAKER
### Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of one specification of conspiracy to commit aggravated assault and one specification of solicitation to commit an offense, in violation of Articles 81 and 134, Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to confinement for two years and a bad-conduct discharge. The Convening Authority approved the sentence, but, pursuant to a pretrial agreement, suspended all confinement in excess of eleven months.

Appellant raises six assignments of error: (1) whether the Convening Authority properly ordered a rehearing without setting aside the findings already made on the charges against Appellant; (2) whether the Convening Authority properly ordered a rehearing where no

summarized record was prepared and authenticated by the detailed military judge; (3) whether the Convening Authority properly ordered a rehearing where the adjudged sentence included a dishonorable discharge or confinement for more than six months; (4) whether Appellant's guilty plea was voluntary where it was obtained through a promise to relax an order prohibiting communication with his son; (5) whether the terms in the pretrial agreement regulating Appellant's future parental visitation with his son are void; and (6) whether this Court may affirm a sentence where a prior conviction was admitted as evidence in sentencing but was later set aside.

We conclude that: (1) Appellant waived the propriety of the rehearing; (2) a military protective order being an explicit term of the pretrial agreement rendered neither the agreement nor the pleas involuntary and is not contrary to public policy; and (3) it was error, but harmless, for the military judge to consider in sentencing a promulgating order from Appellant's subsequently-reversed prior court-martial.

## Factual and Procedural Background

While in pretrial confinement pending charges related to stalking, assaulting, and extorting his wife and violating orders to stay away from her, Appellant conspired with his mother to hire someone to assault his wife in a manner likely to produce death or grievous bodily harm. With this agreement in place, his mother approached an individual and offered him money to commit the assault, but the deal fell through when she could not deliver the money. Separately, Appellant solicited a brig-mate to provide names and contact information of individuals who would commit aggravated assault upon his wife.

While these allegations were still being investigated, a special court-martial tried Appellant for the conduct that had precipitated his pretrial confinement and convicted him of four specifications of violating orders to stay away from his wife; three specifications of making false official statements; one specification of stalking his wife; two specifications of extorting her; two specifications of assault consummated by battery of her; and one specification of obstructing justice. We will refer to that first court-martial as "*Goodell I*" and the present case as "*Goodell II*."

2

As *Goodell I* made its way through the appellate process, *Goodell II* was referred to a general court-martial. On 5 June 2018, a military judge held a session in *Goodell II* where he considered and granted a Defense motion for confinement credit; found Appellant guilty, pursuant to his pleas, of conspiracy to commit aggravated assault and solicitation of another to commit an offense; and sentenced him to confinement for four years, a dishonorable discharge, a $10,000 fine, and reduction to pay grade E-1. The recording of that session, however, was lost or corrupted before a verbatim transcript could be produced. After receiving an oral brief from his staff judge advocate on the options available to him, the Convening Authority elected to order a rehearing.

Before a new military judge, Appellant again pleaded guilty unconditionally to the same offenses as he had previously and again was convicted pursuant to his pleas. During presentencing, the Government successfully offered the promulgating order from *Goodell I* as evidence of a prior conviction under Rule for Courts-Martial (R.C.M.) 1001(b)(3), Manual for Courts-Martial (MCM), United States (2016 ed.). At the rehearing, the military judge sentenced Appellant to confinement for two years and a bad-conduct discharge.

After *Goodell II* adjourned, we set aside the findings and sentence in *Goodell I*. *United States v. Goodell*, 79 M.J. 614, 619 (C.G. Ct. Crim. App. 2019).

**Whether Rehearing was Properly Ordered**

Appellant's first three assignments of error all assert that the rehearing was improperly ordered. Appellant, however, affirmatively waived these objections to being tried by a rehearing. Beyond pleading guilty unconditionally without preserving the issue, he agreed as part of his pretrial agreement "to waive all motions except motions filed under R.C.M. 305(k) and Article 13, UCMJ, and those that are otherwise non-waivable pursuant to R.C.M. 705(c)(1)(B)." (Appellate Ex. XIV at 6.) The military judge conducted a thorough inquiry into the pretrial agreement and specifically addressed this provision. Trial defense counsel assured the military judge that there were no other motions that he intended to file but for this provision and affirmed that "this provision was put in there in exchange for what [he believed] to be a favorable pretrial agreement[.]" (R. at 83.) We are satisfied that this waiver was knowing and

voluntary. *See United States v. Mezzanatto*, 513 U.S. 196 (1995) ("A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.").

We pause, however, to more closely examine Appellant's assertion that the Convening Authority directed a rehearing without a summarized record of the earlier proceeding being prepared. To the extent that Appellant is asserting that this renders the record of the proceeding under our review incomplete, that objection is non-waivable. *See United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000) ("The requirement that a record of trial be complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived."). We, however, conclude that preparation of a summarized report before ordering a rehearing is a waivable procedural requirement and that its absence does not render the record of the rehearing incomplete within the meaning of *Henry*.

Article 54, UCMJ, requires "the preparation of a complete record of the proceedings in a general court-martial where 'the sentence adjudged includes death, a dismissal, a discharge, or (if the sentence adjudged does not include a discharge) any other punishment which exceeds that which may otherwise be adjudged by a special court-martial.'" *United States v. Gaskins*, 72 M.J. 225, 230 (C.A.A.F. 2013) (quoting Article 54(c)(1)(A), UCMJ). Based on Appellant's sentence, a complete record and a verbatim transcript are required. *Id*. at 229–30.

When a verbatim transcript is required but cannot be prepared due to loss of recordings or notes, R.C.M. 1103(f) "explains the convening authority's remedial options[.]" *Id*. at 230. Specifically, it states that:

> a record which meets the requirements of subsection (b)(2)(C) of this rule [authorizing a summarized report of the proceeding when verbatim records are not required] *shall be prepared*, and the convening authority may:
>
> (1) Approve only so much of the sentence that could be adjudged by a special court-martial, except that a bad-conduct discharge, confinement for more than six months, or forfeiture of two-thirds pay per month for more than six months, may not be approved; or

> (2) Direct a rehearing as to any offense of which the accused was found guilty if the finding is supported by the summary of the evidence contained in the record, provided that the convening authority may not approve any sentence imposed at such a rehearing more severe than or in excess of that adjudged by the earlier court-martial.

R.C.M. 1103(f) (emphasis added).

Contrary to the Government's assertion, we believe that the requirement for a summarized report plainly applies to either of a convening authority's options that follow. *But see United States v. Crowell*, 21 M.J. 760, 761 (N.M.C.M.R. 1985) (holding that R.C.M. 1103(f) does not provide "an exclusive remedy" when a verbatim record cannot be prepared and noting that R.C.M. 1102 permits a convening authority to direct a post-trial proceeding in revision without material prejudice to the accused.). Here, although the Staff Judge Advocate orally summarized the earlier proceeding for the convening authority, no record meeting the requirements of R.C.M. 1103(b)(2)(C) was prepared. For two reasons, we nonetheless conclude that Appellant is not entitled to relief.

First, we view this as a procedural requirement, not a jurisdictional one. The proceeding now under our review is the rehearing. With the exception noted below, we have a complete and substantially verbatim record of the rehearing. That is what is required jurisdictionally to uphold the approved sentence. *See* Article 54(c), UCMJ; R.C.M. 1102(b)(2). R.C.M. 1105(f), on the other hand, prescribes procedures for a convening authority to remediate the inability to prepare a verbatim transcript. This does not elevate the rule's requirement for a summarized report to jurisdictional proportion. The requirement is, in our view, waivable, and Appellant waived it.

But second, even if this requirement is non-waivable, under the facts of this case, we view the omission of a summarized report as insubstantial. Not every omission renders a record incomplete. Instead, we assess "whether the omitted material was 'substantial,' either qualitatively or quantitatively." *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982). If substantial, the government must overcome a presumption of prejudice. If not, the record is considered complete. *Id*.

Here, faced with the inability to prepare a verbatim record of the original proceeding, the Convening Authority opted to order a rehearing. Though he did not have a record meeting the requirements of R.C.M. 1103(b)(2)(C) at his disposal as envisioned by R.C.M. 1103(f), he had an oral summary from his staff judge advocate, the report of results of trial, a stipulation of fact supporting the guilty pleas, and the pretrial agreement. It is clear that at the rehearing, Appellant was convicted only of offenses for which he previously had pleaded and was found guilty, and received a lower sentence. In this setting, the omission of a summarized report meeting the requirements for a non-verbatim record is insubstantial and did not prejudice Appellant.

The previously-mentioned exception to our having a complete and verbatim record of the rehearing is that the military judge in the rehearing incorporated the original military judge's ruling on Appellant's motion for confinement credit under R.C.M. 305(k) and Article 13, UCMJ. Although the written pleadings and ruling are in the record, we lack the transcript of the discussion of the motion on the record, which took place during the lost 5 June 2018 session. The record is clear, however, that Appellant fully received the relief he requested—twenty-seven days of administrative confinement credit—leaving us nothing to review for potential prejudicial error. The omission of the prior motions session is thus inconsequential, so the record is considered complete. *See Lashley*, 14 M.J. at 9.

We conclude there is no defect of a jurisdictional proportion and that Appellant otherwise knowingly and voluntarily waived any objection to be tried by the rehearing.

### Military Protective Order as Term of Pretrial Agreement

Appellant's next two assignments of error are predicated on a term in the pretrial agreement where he promised to abide by specific conditions regarding his contact and communication with his wife and son—in other words, a military protective order (MPO). The agreement stipulated the MPO was a material term of the agreement. Related to this term, Appellant asserts: (1) his pleas of guilty were involuntary; and (2) such a provision is contrary to public policy and therefore void.

*Voluntariness of Pleas*

Appellant attacks the voluntariness of his pleas in two ways. First, he asserts they were the product of a *sub rosa* (i.e., secret) promise that the MPO in the pretrial agreement would replace a more restrictive one that had been in place. Second, he asserts that the Convening Authority's use of his power to issue MPOs to leverage a pretrial agreement rendered his pleas involuntary.

A military judge has "significant discretion in deciding whether to accept an accused's guilty pleas. The appellant bears the burden of establishing that the military judge abused that discretion, i.e., that the record shows a substantial basis in law or fact to question the plea." *United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F. 2015) (citing *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014); *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)).

Before accepting a guilty plea, a military judge must ensure that the accused has entered the plea knowingly and voluntarily. *United States v. Soto*, 69 M.J. 304, 306 (C.A.A.F. 2011). To this end, "[i]f a plea agreement exists, the military judge shall require disclosure of the entire agreement"—minus any sentence limitation—and conduct an inquiry to ensure (1) that the accused understands the agreement, and (2) that the parties agree to the terms of the agreement. R.C.M. 910(f)(3)–(4); *Soto*, 69 M.J. at 306. Relatedly, R.C.M. 705(d)(2) requires that "[a]ll terms, conditions, and promises between the parties shall be written." A *sub rosa* agreement thus is not only impermissible but may frustrate a military judge's ability to ensure that a plea is voluntary. *See, e.g., United States v. Bartley*, 47 M.J. 182, 186 (C.A.A.F. 1997).

We conclude that Appellant has failed to demonstrate a substantial basis to question the voluntariness of his pleas for three reasons. First, the guilty plea record demonstrates that Appellant's pleas were voluntary. Consistent with his duties, the military judge conducted a thorough inquiry on the record, and Appellant assured him that he entered into the pretrial agreement freely and voluntarily, that there were no other agreements, and that he was pleading guilty freely and voluntarily. Appellant now *avers* this was not so, but he offers no *evidence* of this, such as an affidavit. In other words, we have no evidence that but for this provision, Appellant would not have pleaded guilty or that Appellant desired to plead not guilty, but

believed he was forced to plead guilty in order to ease restrictions on his contact and communication with his son.

Second, the MPO provision was an explicit part of the pretrial agreement. Although it did not detail that it would replace an earlier, stricter MPO—which, applying hindsight, may have been the better practice for clarity and full disclosure—the terms of the MPO that Appellant was agreeing to were clear, so we do not view this as a *sub rosa* agreement. But even if it were, we can discern no prejudice. During the pretrial agreement inquiry, trial defense counsel expressed the Defense's understanding that the agreed-upon MPO would replace an earlier MPO. The military judge also had the earlier MPO at his disposal as an appellate exhibit. (*See* Appellate Ex. IX at 27; Appellate Ex. XI at 13). There is no indication that the Government attempted to enforce the previous MPO or that Appellant was otherwise prejudiced by the agreement's failure to specify that he was benefiting from a less stringent MPO.

Third, MPOs restricting Appellant's contact and communication with his wife and son had long been in effect, had an apparent military purpose, and there is not a scintilla of evidence that the Convening Authority leveraged his power to issue MPOs to force Appellant into a pretrial agreement or into pleading guilty. To the contrary, the record supports that Appellant successfully—and voluntarily—negotiated a highly beneficial agreement, including a more favorable MPO.

In sum, we conclude that there is no substantial basis to question the voluntariness of Appellant's pleas.

*Whether Contrary to Public Policy*

Next, Appellant asserts that the terms regulating Appellant's contact and communication with his child are void as against public policy.

"To the extent that a term in a pretrial agreement violates public policy, it will be stricken from the pretrial agreement and not enforced." *United States v. Edwards*, 58 M.J. 49, 52 (C.A.A.F. 2003) (citing R.C.M. 705(c)(1)(B); *United States v. Clark,* 53 M.J. 280, 283 (C.A.A.F.

2000)). Applying a balancing test, the Supreme Court calls it "well established" that a promise, whether in a contract or a plea agreement, "is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987).

For military pretrial agreements, the principal expression of public policy is R.C.M. 705(c), which "governs the scope of pretrial agreements" and "identifies both permissible and prohibited terms and conditions." *United States v. Tate*, 64 M.J. 269, 270 (C.A.A.F. 2007); *see also United States v. Libecap*, 57 M.J. 611, 614 (C.G.Ct.Crim.App. 2002). R.C.M. 705(c) prohibits terms or conditions that deprive an accused of one of the following: the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; the right to complete sentencing proceedings; or the complete and effective exercise of post-trial and appellate rights. R.C.M. 705(c)(1)(B). It then lists permissible terms or conditions, which include a "promise to conform the accused's conduct to certain conditions of probation . . . ." R.C.M. 705(c)(2).

R.C.M. 705(c)(1) does not prohibit a promise to abide by an MPO; nor can Appellant point to any caselaw that has done so. In fact, the provision appears to be precisely the type of "promise to conform the accused's conduct to certain conditions of probation" expressly permitted by R.C.M. 705(c)(2). Although it is true that Appellant promised to abide by significant restrictions to his parental rights, "[c]riminal defendants may knowingly and voluntarily waive many rights and Constitutional protections." *Edwards*, 58 M.J. at 52. And, just as in *Rumery*, the possibility that MPO provisions could be abused by convening authorities or could be coercive "does not justify invalidating *all* such agreements." *Rumery*, 480 U.S. at 393.

On balance, we conclude that the interest in enforcing appropriate MPOs outweighs any public policy against it. We thus reject the general contention that such a term is contrary to public policy. Further, reviewing the particular terms of the MPO and the circumstances in this case, we conclude that Appellant's promise to abide by the MPO is not contrary to public policy.

**Sentencing Evidence**

At the time the Government presented it, evidence of Appellant's prior conviction in *Goodell I* was admissible despite that it was pending appeal. *See* R.C.M. 1001(b)(3)(B). But based on our subsequent reversal of *Goodell I*, "[t]he validity of the sentence . . . may be affected[.]" *United States v. Tanner*, 63 M.J. 445, 447 (C.A.A.F. 2006). "In such an instance, we test for prejudice from admission of that prior conviction by determining whether the sentence in the later court-martial 'might have been different' had the conviction not been introduced during sentencing." *Id.* (quoting *United States v. Tucker*, 404 U.S. 443, 448 (1972)). In making that determination, "we consider whether the same information otherwise would have been admissible at the sentence proceeding and at a sentence rehearing." *Id.*

Applying these standards, we conclude that consideration of the promulgating order from *Goodell I* did not prejudice Appellant. Though in retrospect, it was inadmissible as evidence of a *prior conviction* under R.C.M. 1001(b)(3), substantially the same information that undergirded the *Goodell I* conviction would have been admissible as *aggravation evidence* under R.C.M. 1001(b)(4).

R.C.M. 1001(b)(4) allows the trial counsel to "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Evidence may be admissible under the "directly relating to" prong of this rule as "*res gestae* when it directly explains the crime itself or the circumstances under which it was committed." *United States v. Olsen*, 79 M.J. 682, 689 (C.G.Ct.Crim.App. 2019) (citing *United States v. Metz*, 34 M.J. 349, 351–52 (C.M.A.1992)). Relatedly, evidence is admissible under this prong "when uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims . . . ." *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001).

The charges and court-martial proceedings in *Goodell I* were part of the *res gestae* of Appellant's offenses in *Goodell II*. Appellant explained during his providence inquiry that he conspired with and solicited others to harm his wife because he believed she was responsible for

10

the charges pending against him in *Goodell I* and his resultant pretrial confinement. The circumstances of the charges in *Goodell I* were thus inextricably interwoven into those of *Goodell II*.

So too was much of the underlying conduct that formed the basis of the charges in *Goodell I*. Appellant did not decide to seek others' assistance to harm his wife in a vacuum. This charged behavior came at the tail end of a course of conduct of stalking, assaulting, and extorting his wife and violating orders to stay away from her—and, in fact, occurred from the brig as he awaited trial for those offenses. The fact that Appellant was convicted of these offenses would not itself have been admissible under R.C.M. 1001(b)(3), but the underlying conduct would have been under R.C.M. 1001(b)(4).

The posture in which the military judge considered the promulgating order further persuades us of harmlessness. Responding to a Defense objection to the Government's sentencing argument, the military judge stated:

> The court will not consider [Appellant's] prior special court-martial to punish him as he has already been punished for that. The court simply will use that to place into context the crimes for which he's pled guilty to as it relates to the victim. The court will not increase the sentence just based on the fact that the characterizations the trial counsel is making on something that he's already pled guilty to. However, you are allowed to comment on evidence that's been admitted into evidence with reasonable inferences, *such as a common victim in this case, and a continuing course of conduct*.

(R. at 133) (emphasis added). This nests with our conclusion that on the facts of this case, the existence of a past conviction was insignificant compared to Appellant's continuing course of conduct toward a common victim, which as we have said would have been admissible at any rate. We are, on the whole, convinced that admission of the promulgating order was harmless.

**Decision**

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge JUDGE concur.



For the Court,

Sarah P. Valdes
Clerk of the Court