# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Peter J. HERNANDEZ
### Electrician's Mate Second Class (E-5), U.S. Coast Guard

**CGCMSP 24956**
**Docket No. 1452**

**31 October 2018**

| | |
|---|---|
| Military Judge: | CAPT Matthew J. Fay, USCG |
| Appellate Defense Counsel: | LCDR Benjamin M. Robinson, USCG |
| Appellate Government Counsel: | LCDR Tereza Z. Ohley, USCG (brief) |
| | LCDR Stephen R. Miros, USCG |
| | LCDR Emily A. Rose, USCG (argued) |

### BEFORE
### McCLELLAND, BRUBAKER & MOORADIAN
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a special court-martial convicted Appellant, pursuant to his pleas, of three specifications of assault consummated by battery in violation of Article 128, Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to confinement for eight months, reduction to pay grade E-1, and a bad-conduct discharge. Although there was a pretrial agreement, it did not affect the sentence, which the Convening Authority approved.

Appellant asserts that his three convictions under Article 128 were multiplicious.[1] We agree and thus consolidate the specifications and reassess the sentence. This moots Appellant's remaining assertions of unreasonable multiplication of charges and sentence severity.

---

[1] We heard oral argument on this issue.

**United States v. Peter J. HERNANDEZ, No. 1452 (C.G.Ct.Crim.App. 2018)**

**Facts**

After a night of karaoke, pool, and drinking, Appellant and Storekeeper Third Class (SK3) JC returned to Appellant's apartment, which he shared with his girlfriend. Appellant and SK3 JC were close friends at the time and she had agreed to stay the night so she could drive him to the airport the next morning. Appellant helped SK3 JC, who was feeling dizzy, into the guest bedroom. At her request, he turned off the lights and shut the door but, while she thought he had left the room, he remained. He undressed to his boxer shorts, and, without her consent: climbed on top of her, his pelvis making contact with her inner thigh as he did so; pulled her strapless dress down, touching her ribs and upper torso in the process; and removed her underwear, touching her hips in the process. SK3 JC was "immediately startled," told him to stop, and pushed him off her. (Prosecution Ex. 1 at 3).

Although charges were initially referred to a general court-martial, the Government, pursuant to a pretrial agreement, withdrew those charges and instead referred a single charge of assault consummated by battery with three specifications to a special court-martial. These specifications alleged that in the same location on the same date, Appellant unlawfully touched SK3 JC "on the leg, above the knee, with his pelvis," (Specification 1), "on her ribs and upper torso with his hands," (Specification 2), and "on her hips with his hands" (Specification 3). Appellant pleaded guilty unconditionally to all three specifications.

**Analysis**

As both parties concede, Appellant did not entirely waive the issue of multiplicity because he did not agree to "waive all waivable motions" in the pretrial agreement or otherwise affirmatively waive the issue. *Cf. United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009). However, because he pleaded guilty unconditionally, he relinquished his opportunity to challenge the specifications for multiplicity unless he can show they are "facially duplicative" of one another. *United States v. Broce*, 488 U.S. 563, 574 (1989); *United States v. Campbell*, 68 M.J. 217, 219 (C.A.A.F. 2009).

Offenses are "facially duplicative" if, on the face of the guilty plea record, it is apparent that the multiple convictions offend the Double Jeopardy Clause[2] because admission to one offense cannot "conceivably be construed" as amounting to more than a redundant admission to another. *United States v. Broce*, 488 U.S. 563, 574 (1989); *Menna v. New York*, 423 U.S. 61, 62 (1975) ("Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty."). Whether offenses are facially duplicative is a matter of law that we review *de novo*. *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004).

There are distinct types of multiplicity with correspondingly distinct tests to evaluate them. One type arises when the government charges a single act under multiple statutes. Courts assess single-act/multiple-statutes cases "using the *Blockburger*/*Teters*[3] analysis." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). Thus, unless statutory intent is clear, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

A different "species" of multiplicity "occurs when 'charges for multiple violations *of the same statute* are predicated on arguably the same criminal conduct.'" *United States v. Forrester*, 76 M.J. 479, 484–85 (C.A.A.F. 2017) (quoting *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013)). The Supreme Court's decision in *Blockburger*, though now almost synonymous with its "elements" test for single-act/multiple-statutes multiplicity, actually first addressed the other variety: multiple-acts/single statute. Its distinct analytical framework for each type is instructive. In the part of the *Blockburger* opinion addressing a contention that two sales of narcotics to the same person constituted but one violation of the same statute (that is, multiple-acts/single-statute multiplicity), the Court did *not* use its later-stated elements test to determine statutory intent. Instead, it applied standard statutory interpretation to determine whether the

---

[2] U.S. CONST. amend. V.
[3] *Blockburger v. United States*, 284 U.S. 299 (1932); *United States v. Teters*, 37 M.J. 370 (C.A.A.F.1993).

statute was aimed at an "offense continuous in its character" or one "that can be committed *uno ictu*."[4]  *Id.* at 302 (quoting *Ex parte Snow*, 120 U.S. 274, 286 (1887)).  The Court explained that:

> 'when the impulse is single, but one indictment lies, no matter how long the action may continue.  If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.'  Wharton's Criminal Law (11th Ed.) § 34.  Or, as stated in note 3 to that section, 'The test is whether the individual acts are prohibited, or the course of action which they constitute.  If the former, then each act is punishable separately. . . .  If the latter, there can be but one penalty.'

*Id.*

Both types of multiplicity turn ultimately on statutory intent.  For single-act/multiple-statutes multiplicity, we use the *Blockburger* elements test in the absence of clear intent.  For multiple-acts/single-statute multiplicity, we use all the tools of statutory interpretation to determine the provision's "allowable unit of prosecution."  *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 (1952); *Forrester*, 76 M.J. at 485.

This is a multiple-acts/single-statute case: the contention here, much like the one considered in the *first* part of the *Blockburger* opinion, is that the multiple touchings alleged under one statute constituted but one offense.  Thus, the Government's position—that the offenses are not facially duplicative because each required proof of a fact that the others did not—misses the mark because it attempts to apply the single-act/multiple-statutes test to a multiple-acts/single-statute case.  Within the correct legal framework, the issue instead boils down to this: is the unit of prosecution for assault consummated by battery under Article 128 each touching (irrespective of how united in time, impulse, and circumstance), or is it a continuous course-of-action offense?

Binding authority from our superior court—though somewhat dated and muddled by its conflation of multiplicity and unreasonable multiplication of charges typical of the time—provides the answer.

---

[4] In one stroke.

In *United States v. Rushing*, 11 M.J. 95 (C.M.A. 1981), the appellant was convicted under Article 128 of one specification for striking a man with his fist and a second specification for throwing a cue stick at him. The Court of Military Appeals (predecessor to today's United States Court of Appeals for the Armed Forces (CAAF)), held, without elaboration, that "the evidence impels the conclusion that the acts were so united in time, circumstance, and impulse in regard to a single person as to constitute a single offense." *Id.* at 98.

Three years later, the same court analyzed separate convictions under Article 128 for shoving a man in the chest and striking him in the forehead. *United States v. Morris*, 18 M.J. 450 (C.M.A. 1984). Noting that these touchings "occurred during a single, uninterrupted scuffle," the Court concluded the specifications were multiplicious. *Id.* at 450–51. The Court began its analysis with what we now understand applies to unreasonable multiplication of charges—not true multiplicity, which is always grounded in the Double Jeopardy Clause—by invoking the regulatory admonition that "[o]ne transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person." *Id.* at 450 (quoting paragraph 26*b* of the Manual for Courts-Martial, United States, 1969 (Revised edition)). But it quickly followed with constitutional underpinnings for its decision by interpreting statutory intent and holding that that the separate blows were "merely different aspects of a continuous course of conduct prohibited by one statutory provision." *Id.* (internal quotation marks and citation omitted). Even more telling was this pronouncement: "When Congress enacted Article 128, it did not intend that, in a single altercation between two people, each blow might be separately charged as an assault." *Id.*

In *United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989), the Court reiterated its holding in *Morris*, but distinguished it, noting that Flynn "was not found guilty of simple assault under this codal provision but rather was convicted of an aggravated-type assault which includes a specific intent to commit a particular crime of a more severe nature." *Id.* The Court thus concluded that "the intended unit of prosecution is best gauged by the duration of the specific intent required for commission of the offense." This is true, constitutionally-grounded multiplicity language, not mere conflation with the regulatory and caselaw-based doctrine of unreasonable multiplication of charges.

Bound by this precedent, we conclude that separate assaults consummated by battery of a single person that are united in time, circumstance, and impulse fall within one unit of prosecution under Article 128, not several. *Accord United States v. Clarke*, 74 M.J. 627, 628 (A.Ct.Crim.App. 2015) ("Generally speaking, the unit of prosecution for the type of ongoing assault found in this case—an uninterrupted attack comprising touchings 'united in time, circumstance, and impulse'—charged under Article 128, UCMJ, as opposed to the specialized assaults charged under Article 120 or 134, is the number of overall beatings the victim endured rather than the number of individual blows suffered."); *United States v. Lombardi*, No. NMCM 200001461, 2002 WL 1400258, at *2 (N.M.Ct.Crim.App. June 26, 2002) (unpub.) ("The physical contacts that are a part of a continuous-course-of-conduct equate to one assault under Article 128, UCMJ.").

This analysis does not change merely because, unlike *Rushing* and *Morris*, the touchings here were not blows in an altercation. We see no reason or support to conclude that Congress intended the unit of prosecution under Article 128 to vary depending on the context of the touching. Irrespective of the origins of the charge and what the unit of prosecution might have been under other articles, once the Government charged the conduct under Article 128, it was bound by that codal provision's unit of prosecution.

Given these legal conclusions, it becomes clear that Appellant's three convictions are facially duplicative within the meaning of *Broce*. The three touchings "happened around the same time," "happened really fast," and were part of an uninterrupted sequence in which Appellant attempted "to make a pass" on a single victim. (R. at 42, 46.) The stipulation of fact illustrates the point. It begins the recitation of each touching with, "I climbed on top of SK3 J.C., who was lying on the bed, and touched . . . ." (Prosecution Ex. 1 at 2–3). It says that SK3 JC "felt uncomfortable" and "felt threatened" by each touching. (*Id.* at 2–4.) After describing the third touching, it says that SK3 JC was "immediately startled," at which point she told him to stop, pushed him off her, and the unwanted physical contact ceased. (*Id.* at 3). Given congressional intent as pronounced in *Morris* and this unity of time, circumstance, and impulse, the three convictions under Article 128 were for touchings that fell within but one unit of

prosecution and therefore violated the Double Jeopardy Clause. We thus consolidate the specifications in our decretal paragraph.

## Sentence Reassessment

Because we alter the findings, we must determine whether we are able to reassess the sentence. We conclude we can.

Courts of Criminal Appeal have broad discretion to reassess sentences. *United States v. Winckelmann,* 73 M.J. 11, 15 (C.A.A.F. 2013). But we may only do so if we can reliably and confidently determine that, absent the error, the sentence would have been at least of a certain magnitude. *United States v. Buber,* 62 M.J. 476, 479 (C.A.A.F. 2006); *United States v. Harris,* 53 M.J. 86, 88 (C.A.A.F. 2000). If we cannot do this, we must order a rehearing. *Harris,* 53 M.J. at 88. A reassessed sentence must not only "be purged of prejudicial error[,]" but "also must be 'appropriate' for the offense involved." *United States v. Sales,* 22 M.J. 305, 308 (C.M.A. 1986).

We apply the totality of the circumstances of each case to make sentence reassessment determinations, guided by the following "illustrative, but not dispositive, points of analysis":

(1) Whether there has been a dramatic change in the penalty landscape or exposure.

(2) Whether sentencing was by members or a military judge alone. We are more likely to be certain of what sentence a military judge would have imposed as opposed to members.

(3) Whether the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, similarly, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann,* 73 M.J. at 15–16.

Under the totality of the circumstances, we conclude that we can reassess the sentence. Our action reduces the maximum confinement from the jurisdictional maximum of twelve months to six; the maximum for the other adjudged punishments remains the same. While this represents a significant change in the penalty landscape, the remaining factors weigh in favor of reassessment.

We conclude that we can reliably and confidently determine that the sentence, purged of error, would have included at least confinement for six months, reduction to pay grade E-1, and a bad-conduct discharge. Whether categorized as three separate acts or one course of conduct, the serious nature of Appellant's conduct remains the same. While the military judge would have been bound by a maximum of six months' confinement, the aggravating circumstances—including the impact Appellant's actions had on a young woman who had considered him like a brother—would have remained admissible and relevant. Finally, we consider the modified sentence appropriate for the single specification of assault consummated by battery under these factual circumstances.

We are mindful that Appellant has already served his full period of approved confinement. We thus further modify the sentence and conclude that only so much as includes confinement for six months, reduction to pay grade E-2, and a bad-conduct discharge should be approved. We believe that financial implications of our reassessment provide meaningful relief and that providing any further relief would be disproportionate to the harm suffered and the nature of the offense. *See United States v. Zarbatany*, 70 M.J. 169, 170 (C.A.A.F. 2011).

## Decision

The three specifications under the sole charge are consolidated into a single specification to read as follows:

> In that EM2 Peter J. Hernandez, U.S. Coast Guard, on active duty, did, at or near Honolulu, HI, on or about 20 September 2015, unlawfully touch SK3 J.C. on the leg above the knee with his pelvis and on her ribs, upper torso, and hips with his hands.

Only so much of the sentence as includes confinement for six months, reduction to pay grade E-2, and a bad-conduct discharge is affirmed. The findings and sentence, as modified, are correct in law and in fact and are affirmed.

Chief Judge McCLELLAND and Judge MOORADIAN concur.



For the Court,


Sarah P. Valdes
Clerk of the Court