# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS, and ARGUELLES[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class MICHAEL S. MALONE, JR.**
**United States Army, Appellant**

ARMY 20230151

Headquarters, 1st Armored Division and Fort Bliss
Jessica R. Conn, Military Judge
Colonel Andrew D. Flor, Staff Judge Advocate

For Appellant: Lieutenant Colonel Autumn D. Porter, JA; Major Cody Cheek, JA; Captain Matthew S. Fields, JA (on brief); Colonel Philip Staten, JA; Lieutenant Colonel Autumn D. Porter, JA; Major Cody Cheek, JA; Major Mitchell D. Herniak, JA (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jaqueline D. DeGaine, JA; Major Chase C. Cleveland, JA; Captain Vy T. Nguyen, JA (on brief).

23 May 2024

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

ARGUELLES, Judge:

A military judge sitting as a general court martial convicted appellant, pursuant to his pleas, of three specifications of domestic violence, and two specifications of disobeying a superior officer in violation of Articles 128b and 90 Uniform Code of Military Justice, 10 U.S.C. §§ 928b, 890 (2018) [UCMJ]. In accordance with the plea agreement, the military judge sentenced appellant to

---

[1] Judge ARGUELLES decided this case while on active duty.

reduction to the grade of E-3, a bad-conduct discharge, and confinement for thirty months.[2]

This case is before the court for review pursuant to Article 66, UCMJ. Appellant's sole assignment of error is that his domestic violence convictions are multiplicious. For the reasons that follow, we find that appellant has affirmatively waived his multiplicity challenge to the domestic violence specifications; as such, there is no error for us to correct on appeal.[3]

## BACKGROUND

On the evening of 30 November 2022, an argument broke out between appellant and the victim, his girlfriend. After the victim attempted to call 911, appellant first struck her in the face with his hand in the master bedroom. As the encounter moved into the bathroom, he continued to punch her in the face, arm, shoulder, abdomen and leg. Appellant then threw the victim to the ground, breaking her right clavicle.

As part of the written plea agreement he entered into with the convening authority, appellant agreed to plead guilty to three specifications of domestic violence (hereinafter referred to as the "domestic violence specifications"):

Specification 1: In that [appellant . . . ] did commit a violent offense against [victim], the intimate partner of the accused, to wit: by unlawfully striking her in the face with his hand.

Specification 3: In that [appellant . . .] did commit a violent offense against [victim], the intimate partner of the accused, to wit: by unlawfully striking her in the head, face, arm, shoulder, torso, and leg with his hand.

---

[2] Although Block 21 of the Statement of Trial Results properly reflects that the military judge credited appellant with 92 days of pretrial confinement credit, Block 23 of the Statement of Trial Results incorrectly states appellant has zero total days of credit. We will exercise our discretion to correct this error. *See* Rule for Courts-Martial 1111(c)(2); *United States v. Pennington*, ARMY 20190605, 2021 CCA LEXIS 101, at *5 (Army Ct. Crim. App. 3 Mar. 2021) (summ. disp.) ("Exercising our authority under R.C.M. 1111(c)(2), we note and correct the following issues in appellant's post-trial documents . . . .").

[3] We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them likewise to be without merit.

Specification 4: In that [appellant . . .] did commit a violent offense against [victim], the intimate partner of the accused, to wit: unlawfully throw [victim] to the ground with his hand, and did thereby inflict substantial bodily harm, a broken clavicle.

In addition, as part of his plea agreement appellant agreed to plead to two specifications of disobeying a superior officer. In exchange, the convening authority agreed to withdraw and dismiss an additional domestic violence specification, one specification of assault with the infliction of substantial bodily injury, one specification of maiming, and one specification of obstruction of justice. Although appellant was facing a maximum period of incarceration of 23 years based solely on the specifications to which he pleaded guilty, the convening authority agreed to a maximum sentence of only thirty-two months.

During the plea colloquy, the military judge established that the conduct underlying all three domestic violence specifications was "part of the same event" and "all part of the same transaction." Defense counsel also affirmatively stated on the record prior to the entry of pleas, however, that appellant was not raising any motions to dismiss:

> Military Judge: [Appellant] how do you plead? Before receiving your plea, I advise you that any motions to dismiss or to grant other appropriate relief should be made at this time. Your defense counsel will speak for you.

> Defense Counsel: Your Honor, the defense has no motions.

## LAW AND DISCUSSION

In his plea agreement, appellant not only expressly agreed to plead guilty to all three domestic violence specifications, but he also agreed to the imposition of separate sentences for each specification. In exchange, appellant received multiple benefits, to include the dismissal of several other charges and specifications, as well as significant limitations on his sentence.

Ignoring the binding obligations contained in the plea agreement, appellant now claims that because his domestic violence convictions are multiplicious, this court should merge all three specifications into a single specification and reassess his sentence. For the reasons set forth below, however, appellant has affirmatively waived his multiplicity challenge to the domestic violence specifications, and there is no error for us to correct on appeal.

3

## A. United States v. Hardy

In *United States v. Hardy*, the Court of Appeals for the Armed Forces (CAAF) addressed the "consequences of failing to raise an objection of unreasonable multiplication of charges (UMC) before entering an unconditional guilty plea." 77 M.J. 438, 440 (C.A.A.F. 2018). In sum, the CAAF held that: (1) appellant affirmatively waived his UMC objection; (2) "the general principle of criminal law that an 'unconditional plea of guilty waives all nonjurisdictional defects at earlier stages of the proceedings'" compels the same result; and (3) by agreeing to the maximum sentence as part of his plea, "the accused implicitly conceded that there was no UMC objection because the remedy for such an objection would affect the maximum sentence." *Id.* at 441-42. While we recognize that there is a difference between a UMC objection and a multiplicity objection, as discussed below we find the holding and logic of *Hardy* to be applicable here.

## B. Affirmative Waiver

Rule for Courts-Martial [R.C.M.] 907(b)(3) provides that a specification for multiplicity "may be dismissed upon timely motion by the accused . . . ." Rule for Courts-Martial 905(b)(2) states that any defense objection based on defects to the charges or specifications "must be raised before a plea is entered." Finally, R.C.M. 905(e)(1) states that the failure of a party to make a motion or objection before pleas are entered "forfeits the objection absent an affirmative waiver." Our standard of review for whether an issue is waived is de novo. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

The CAAF, its predecessor Court of Military Appeals (CMA), and this court have all held that although a failure to make a timely motion to dismiss will generally constitute waiver of any multiplicity claims, such claims are only forfeited if they rise to the level of plain error. *See, e.g. United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000) (citing *United States v. Britton*, 47 M.J. 195, 198 (C.A.A.F. 1997); *United States v. Herd*, 29 M.J. 702, 708 (A.C.M.R. 1989) (holding that where charges are multiplicious on their face, the issue is preserved for appeal despite the failure to object at trial). On the other hand, there is also a long line of precedent recognizing that if an appellant affirmatively waives his multiplicity claim, it is unreviewable on appeal. *See, e.g. United States v. Vogan*, 27 M.J. 882, 884 (A.C.M.R. 1989) ("Based on these facts, we hold that the defense counsel affirmatively waived the foregoing issue of multiplicity for sentencing."); *United States v. Jones*, 23 M.J. 301, 303 (C.M.A. 1987) (holding that a failure to move that a charge be made more specific is fatal to appellate claim of multiplicity).

In *Davis*, the CAAF reiterated the difference between waiver and forfeiture: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment

of a known right." 79 M.J. at 331 (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). After explaining all of the instructions he intended to give, the military judge in *Davis* asked if defense counsel had any objections or requests for additional instructions, to which counsel responded "No changes, sir," and "No, your honor." *Id.* at 330. Rejecting appellant's forfeiture claim, the CAAF held that:

> Appellant did not just fail to object and thereby merely forfeited his claim. He affirmatively declined to object to the military judge's instructions and offered no additional instructions. By "expressly and unequivocally acquiescing" to the military judge's instructions, Appellant waived all objections to the instructions . . . .

*Id.* at 331. "Consequently, while we review forfeited issues for plain error, 'we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.'" *Id.* (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

Addressing the same issue, the CAAF in *United States v. Rich* held that "'[w]hile there are no 'magic words' dictating when a party has sufficiently raised an error to preserve it for appeal, of critical importance is the specificity with which counsel makes the basis for his position known to the military judge.'" 79 M.J. 472, 475 (C.A.A.F. 2020) (citations omitted). Likewise, the CAAF held that while "[a] forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *Id.* (citing *Campos*, 67 M.J. 330, 332).

Applying the above precedent to this case, appellant did not merely "fail to object" to any multiplicity defects in the domestic violence specifications. To the contrary, when defense counsel affirmatively told the military judge that he had no motions to dismiss, that was a "deliberate decision" not to challenge what appellant is now claiming are "plainly erroneous" specifications. Indeed, given the significant benefits the plea agreement conferred upon appellant, it is not surprising that his counsel chose not to unwind it by raising his multiplicity challenge prior to the entry of pleas. Specifically, if trial defense counsel successfully made such a motion when directly asked to do so by the judge, the merger of the domestic violence specifications into one specification would have left appellant unable to fulfill a "material promise or condition" of his plea agreement by pleading guilty to *three* domestic violence specifications. This in turn would have triggered the clause in the agreement allowing the convening authority to withdraw and proceed to trial on *all* of the charges and specifications.

Put another way, it does not serve the ends of justice to allow appellant to deliberately decline to make a multiplicity challenge, even when directly asked by the military judge if he had any such motions, at a time when the convening

authority could still withdraw from the agreement; and instead wait to raise such a challenge for the first time on appeal after he has reaped all of the benefits and the convening authority can no longer withdraw. *See United States v. Cook*, 12 M.J. 448, 455 (C.M.A. 1982) ("Justice would not be served by such an outcome, nor could such a result have been contemplated by the parties when they entered into the pretrial agreement."); *United States v. Sanchez*, 81 M.J. 501, 506 (Army Ct. Crim. App. 2021) ("Securing a favorable pretrial agreement via a guilty plea, and then on appeal attacking the facial legality of one of the specifications, is inconsistent with the fair and efficient administration of justice."). This is especially true given that appellant is now contending that the domestic violence specifications at issue were so facially defective as to constitute plain error.

We also note this is not the first time that this court has held that a negative response to the military judge's pre-plea inquiry of whether appellant has any motions to dismiss constitutes an affirmative waiver. *See, e.g. United States v. Morris*, ARMY 2020066, 2021 CCA LEXIS 182 at *19 (Army Ct. Crim. App. 15 Apr. 2021) ("Likewise, because appellant also did not seek relief on these grounds when called upon by the military judge to make 'any motions to dismiss or grant other appropriate relief' prior to entering his plea, his Article 32 discovery claim is waived."); *United States v. Pereira*, ARMY 20190704, 2021 CCA LEXIS 15, at *6 (Army Ct. Crim. App. 19 Jan. 2021) (holding that appellant waived his UMC claim by failing to raise it prior to the entry of pleas and after being informed by the military judge that "any motion to dismiss or grant other appropriate relief should be made at this time.").

Finally, to the extent appellant is claiming that the government could have secured a waiver of his multiplicity objections by including a "waive all waivable motions" clause in the plea agreement, we agree with our superior court that while "we have no reason to question whether these clauses may suffice to waive" a multiplicity objection, we do not believe such a clause is necessary in this case for the reasons given above. *Hardy*, 77 M.J. at 443.

In sum, because appellant has affirmatively waived his multiplicity challenge there is no error for us to correct on appeal. *Davis*, 79 M.J. at 331. *See also* Article 66(d)(1)(A), UCMJ ("The Court may only affirm such findings of guilty as the Court finds correct in law, and in fact . . . ."); *United States v. Conley*, 78 M.J. 747, 749 (Army Ct. Crim. App. 2019) ("A valid waiver extinguishes the claim of legal error") (citing *United States v. Ahern*, 76 M.J. 194, 197-98 (C.A.A.F. 2017).[4]

---

[4] We are cognizant that under Article 66(d)(1) we still retain the discretion to pierce any waiver and provide *sentence* relief "on the basis of the entire record." To the extent appellant is also seeking such relief in the form of only a merger of the three

(continued . . .)

### C. General Criminal Principles

Given our holding that appellant affirmatively waived his multiplicity challenge, we need not address the other factors considered by the CAAF in *Hardy*. Nevertheless, we will take this opportunity to express our view of why recent statutory changes may impact what constitutes the "unit of prosecution" and a "facially duplicative" specification in the context of domestic violence. *United States v. Allbery*, 44 M.J. 226, 228 (C.A.A.F. 1996) (holding if a service level appellate court believes the underlying logic of one of the CAAF's decisions has changed, its recourse is "to express that viewpoint and to urge our reconsideration of our precedent").

As noted above, in *Hardy,* the CAAF held that under the general principles of criminal law, because unreasonable multiplication of charges is not a jurisdictional defect, a guilty plea waives the objection. 77 M.J. at 442. The CAAF in *Hardy* also recognized an exception to this rule, however, for multiplicity challenges when the offenses are "facially duplicative." *Id.* (citing *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). *See also United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997) (holding that an unconditional guilty plea waives a multiplicity issue unless the offenses are "facially duplicative, that is factually the same") (citations omitted). To determine whether specifications are "facially duplicative" we look both to the factual conduct alleged in each specification and the providence inquiry conducted by the military judge at trial. *Pauling*, 60 M.J. at 94 (citations omitted).

In *United States v. Forrester*, the CAAF addressed a multiplicity claim involving multiple violations of the same statute predicated on arguably the same criminal conduct, as is the case here. 76 M.J. 389, 395 (C.A.A.F. 2017). To resolve this "species" of multiplicity, a reviewing court must first determine the "allowable unit of prosecution" for the alleged crime. *Id.* (citations omitted).

With respect to the unit of prosecution for assault consummated by battery, we agree with our sister court that the binding authority from our superior court is "somewhat dated and muddled by its conflation of multiplicity and unreasonable multiplication of charges." *United States v. Hernandez*, 78 M.J. 643, 646 (C.G. Ct. Crim. App. 2018). Nevertheless, as we have previously recognized, the unit of prosecution for assault consummated by battery consisting of "an uninterrupted attack comprising touchings united in time, circumstance, and impulse – charged under Article 128, UCMJ, as opposed to the specialized assaults charged under Article 120 or 134, is the number of overall beatings the victim endured rather than

---

(. . .continued)
sentences imposed for his domestic violence convictions (as opposed to the guilty findings), we decline to exercise our discretion to do so given that the military judge imposed *concurrent* sentences for all three specifications.

the number of individual blows suffered." *United States v. Clarke*, 74 M.J. 627, 628 (Army Ct. Crim. App. 2015) (citing *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981).

Applied in this case, given that Specification 4 alleges a distinct offense, that is, domestic violence with the infliction of substantial bodily injury, it is not facially duplicative with the other two domestic violence specifications. With respect to Specifications 1 and 3, however, although they are not literally duplicative as written, taking into consideration the providence inquiry as we must, prior precedent dictates that *if charged as assault consummated by battery specifications*, Specifications 1 and 3 would be facially duplicative as they involve an uninterrupted attack.

But specifications 1 and 3 were *not* charged as an assault consummated by battery under Article 128, but rather as domestic violence offenses under Article 128b. As such, we question whether the line of precedent pertaining to the unit for prosecution for assault consummated by battery is even applicable in this case. In authorizing the new and distinct offense of domestic violence under Article 128b as part of the National Defense Authorization Act for Fiscal Year 2019, Congress clearly expressed its intent to view the offense of domestic violence as separate and apart from assault consummated by battery. Pub. L. No. 115-232, 132 Stat. 1636 (2018), § 532(a). Indeed, in our view, domestic violence is more akin to the "specialized assaults charged under Article 120 or 134" in which each touching or penetration within a continuous course of conduct may be charged as a separate offense, as opposed to a "simple" assault not involving domestic partners. *Clarke*, 74 M.J. at 628. Along the same lines, if we were to the extend the "transaction doctrine," to Article 128b, we would effectively – though completely inadvertently – send a message to domestic abusers that once they land the first blow, those that follow soon thereafter are immune from criminal responsibility. Even in an episode that lasts five seconds, unless the governing statute says otherwise, we can see no reason to require the government to choose between prosecuting a punch that leaves a black eye or the subsequent kick that leaves a bruised leg, nor can we fathom a reason to require the government to combine the two attacks into one specification.

As noted above, however, given that appellant affirmatively waived his multiplicity challenge, we need not answer the question of what the appropriate unit of prosecution is for domestic violence offenses and/or whether Specifications 1 and 3 are "facially duplicative." Moreover, recognizing that it is not our place to determine the continuing viability of CAAF precedent, at this juncture we simply raise these issues for our superior court's consideration. *See Allbery*, 44 M.J. at 228.

### D. *Implicit concession of no multiplicity error*

In *Hardy* the CAAF also held that "[a]s a practical matter, a UMC objection must be raised before the accused enters a guilty plea because the objection may affect that the maximum sentence that the court martial may impose." 77 M.J. at 442. Further explaining, the CAAF held that the military judge cannot inform an accused of the maximum sentence as required by R.C.M. 910(c)(1) "if a UMC objection later will result in a merger of the specifications." *Id.* As such, the CAAF held that if an accused agrees with trial counsel's recitation of the maximum sentence before entering his guilty pleas, as is the case here, he or she "implicitly concedes that there is no UMC objection because the remedy for such an objection would affect the maximum sentence." *Id.* at 441-42.

While we recognize that there is a slight difference between a UMC objection and a multiplicity objection, in our view the above-cited holding and logic of *Hardy* applies with equal force in the present context, where appellant seeks a post-trial merger of the domestic violence specifications, notwithstanding the fact that as part of his plea he agreed to a maximum sentence based in part on *three* separate specifications. We are also cognizant, however, that because *Hardy* was a UMC case, the CAAF did not have the occasion to opine on the applicability of this logic in a multiplicity case, nor did it address the inherent conflict between any such holding and its prior precedent allowing "facially duplicative" multiplicious specifications to be challenged on appeal, even when entered as part of a guilty plea.

While it appears to us that the logic and holding of *Hardy* would trump the previously recognized multiplicity exception, such a holding is not necessary to our decision given appellant's express waiver. Moreover, and in any event, we must defer to our superior court to overrule its own precedent. *See United States v. Tovarchavez*, 78 M.J. 458, 465 (C.A.A.F. 2019) ("[I]t is for this Court, not the ACCA, to overrule our precedent.") (citations omitted).

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Judge PENLAND and Judge MORRIS concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court