# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Jessica R. TRUITT
### Machinery Technician First Class (E-6), U.S. Coast Guard

### CGCMSP 25010
### Docket No. 1488

### 2 July 2024

Special court-martial sentence adjudged on 09 March 2022.

| | |
|---|---|
| Military Judge: | CDR Timothy N. Cronin, USCG |
| Appellate Defense Counsel: | LCDR Jennifer S. Saviano, USCG |
| | LCDR Thadeus J. Pope, USCG (Argued) |
| Appellate Government Counsel: | LT Chistopher J. Hamersky, USCG (Argued) |
| | LT Tae W. Chon, USCG |

## BEFORE
## McCLELLAND, BRUBAKER & PELL
Appellate Military Judges

BRUBAKER, Judge:

In this case, we examine the boundaries of the Coast Guard's punitive order prohibiting sexual harassment. Appellant was the leading petty officer of Coast Guard Sector San Francisco's machinery technician shop. She was in a locker room with Machinery Technician Second Class (MK2) TC, who had recently joined the shop. The two were alone, chatting as they changed clothes. While talking about people within the shop, Appellant referred to Seaman (SN) SA, a junior enlisted member of the shop, as "[a] sector slut." R. at 355. MK2 TC testified she found the comment offensive and was "shocked," R. at 355, but said nothing until, about three weeks later, she relayed the comment to SN SA.

During a meeting with junior enlisted members of the shop, Appellant asked whether they felt they could trust her. SN SA said she did not because she heard what Appellant had

called her. After the meeting, Appellant said, "You know I didn't mean it. You're like a little sister to me." R. at 209.

Separately, Appellant invited members of her shop to her residence for an unofficial holiday party. In preparation, she directed two junior enlisted subordinates to use a government vehicle to bring chairs, a carpet cleaner, carpet shampoo—all government property—to her residence. There, during their normal working hours, they set up the chairs, cleaned her carpet, laid some linoleum, and fixed her fence.

A military judge, sitting as a special court-martial, convicted Appellant of four specifications of violating a lawful general order in violation of Article 92, Uniform Code of Military Justice (UCMJ). One specification was for violating ALCOAST Commandant's Notice (ACN) 003/20, dated 7 January 2020, by sexually harassing SN SA. The remaining three specifications were for violating the *Coast Guard Standards of Ethical Conduct Manual*, COMDTINST M5370.8B, para. 7 (1 March 2002), by directing her subordinates to use official time for acts outside their official duties and to use government property for other than authorized purposes. The military judge sentenced Appellant to reduction to E-5 and a letter of reprimand. Judgment was entered accordingly.

Appellant now raises four assignments of error (AOEs), paraphrased as follows:

I.   The specification alleging sexual harassment in violation of a lawful general order fails to state an offense;

II.  The evidence is legally and factually insufficient to support Appellant's conviction for sexual harassment in violation of a lawful general order;[1]

III. The specifications alleging violation of the *Standards of Ethical Conduct Manual* fail to state an offense, and the evidence is legally and factually insufficient to support those guilty findings;[2] and

---

[1] We heard oral arguments on AOEs I and II.

[2] Appellant personally raised this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having considered this issue, we deny relief.

IV.     Appellant was denied the right to trial by a panel of members at a special court-martial in violation of the Due Process Clause of the Fifth Amendment.[3]

We conclude the evidence supporting the conviction for sexual harassment in violation of a lawful general order is legally insufficient. We set aside the conviction, mooting AOE I. We affirm the remaining convictions and reassess the sentence.

**Sufficiency of Evidence to Prove Sexual Harassment**

We review the legal sufficiency of evidence de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018) (citing *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017)). Evidence is legally sufficient if, viewing the evidence in the light most favorable to the prosecution and drawing every reasonable inference from it in favor of the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (cleaned up) (quoting *Robinson* 77 M.J. at 297–298). "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction." *Smith*, 83 M.J. at 359 (cleaned up) (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

Appellant asserts there was legally insufficient evidence to prove that her act of referring to SN SA as a "sector slut" in a one-on-one conversation with MK2 TC constituted "sexual harassment" of SN SA within the meaning of ACN 003/20. We interpret the meaning of general orders and regulations de novo as a question of law, applying ordinary rules of statutory construction. *United States v. Estrada*, 69 M.J. 45, 47 (C.A.A.F. 2010) (citing *United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007)).

ACN 003/20 provides:

Definition: sexual harassment is unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature, when:

   a.   Submission to such conduct is made either implicitly or explicitly a term or condition of employment;

---

[3] Having considered this issue, we deny relief. *See United States v. Wheeler*, 83 M.J. 581, 592 (N-M. Ct. Crim. App.), *review granted*, 83 M.J. 393 (C.A.A.F. 2023).

    b.   Submission to or rejection of such conduct is used as a basis for employment decisions; or

    c.   Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. This definition also includes unwelcome display or communication of sexually offensive materials. Physical proximity is not required. Conduct may occur telephonically, virtually, or by way of other electronic means.

ACN 003/20, para. 3.

At issue here is whether Appellant's comment to MK2 TC was "other conduct of a sexual nature" that "unreasonably interfere[d] with [SN SA]'s work performance or create[d] an intimidating, hostile, or offensive working environment." *Id.* The order provides no further guidance on these phrases. We are, however, guided by "a longstanding interpretive principle: When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) (internal quotation marks omitted) (quoting *Hall v. Hall*, 584 U.S. 59, 73 (2018)); *see also George v. McDonough*, 596 U.S. 740, 746 (2022). In the same vein, the United States Supreme Court has articulated that "it is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 292 (2012) (cleaned up) (quoting *Molzof v. United States* 502 U.S. 301, 307 (1992)).

This "cardinal rule" applies here. ACN 003/20's language defining "sexual harassment" is obviously transplanted from the Equal Employment Opportunity Commission's (EEOC) Guidelines on Discrimination Because of Sex, which states:

Harassment on the basis of sex is a violation of section 703 of title VII.[4] Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably

---

[4] Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e(k).

> interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11

When drafters transplanted this language, including terms of art such as "intimidating, hostile, or offensive working environment," into ACN 003/20, the borrowed terms brought with them the "old soil" of decades of their application and interpretation in federal courts. We can presume that by choosing to employ the EEOC's definition of "sexual harassment," the order's drafters knew and adopted "the cluster of ideas . . . attached to each borrowed word in the body of learning from" the Title VII context from which it was taken. *Cooper*, 566 U.S. at 292.

This presumption is only strengthened when we consider the *U.S. Coast Guard Civil Rights Manual* in effect at the time ACN 003/20 was signed, COMDTINST M5350.4D (20 May 19) (superseded by COMDTINST M5350.4E (21 Oct 20)). The *Civil Rights Manual* expressly addressed sexual harassment as understood in the Title VII context. It provided, "In the usual case, a single utterance of an ethnic, sexual, or racial epithet that offends an employee would not be severe enough to constitute unlawful harassment in violation of federal law; however it is the Department of Homeland Security and Coast Guard's policies that such conduct is substantiated prohibited harassment and must be stopped." COMDTINST M5350.4D, ch. 3, para. C.1.c.

The Government posits that this supports a broader definition of what constitutes prohibited sexual harassment under the punitive provisions of ACN 003/20, but we believe it does the opposite. The drafters of the *Civil Rights Manual* acknowledged commonly understood narrowing constructions of these phrases defining sexual harassment under federal law. Only after doing so—and noting that a single use of a sexual epithet would usually *not* be severe enough to constitute unlawful harassment under this body of learning—did the *Civil Rights Manual* go beyond that common understanding to expressly broaden what is considered prohibited *as a matter of administrative policy*. In contrast, the *punitive* order, ACN 003/20, takes no such steps to expand the definition of sexual harassment for purposes of criminal liability beyond the use of EEOC terms of art as commonly understood under federal law. In fact, it distinguishes between criminal provisions and the *Civil Rights Manual*'s administrative

provisions: "The existing anti-harassment procedures in [the *Civil Rights Manual*] are the generally preferred means for addressing allegations of sexual harassment. Other tools, including those that exist in the UCMJ, should be used in appropriate circumstances." ACN 003/20, para. 5.

We thus interpret the phrases "other conduct of a sexual nature" and "purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment," ACN 003/20, para. 3, not in a vacuum, but informed by the body of learning from which these phrases were borrowed. Under that body of learning, contrary to Appellant's assertion, the use of a sexual epithet such as "slut" may constitute "other conduct of a sexual nature." *See, e.g., Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 229–30 (1st Cir. 2007) ("A raft of case law . . . establishes that the use of sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch,' . . . has been consistently held to constitute harassment based upon sex."); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 (3d Cir. 1990), *superseded by statute on other grounds*, 42 U.S.C. § 1981a ("[T]he pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment.").

Nor, contrary to Appellant's assertion, does the use of such an epithet need to be accompanied by conduct implying sexual desire:

> [H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

However, to rise to the level of unlawful harassment, such conduct "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (cleaned up)

(quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). As the Supreme Court has emphasized:

> The prohibition of harassment on the basis of sex . . . forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."

*Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

"In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment under the [Supreme Court's] standard, it is well-established that the court must consider the totality of circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (citing *Harris*, 510 U.S. at 23) ("whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.").

Accordingly, we hold that to be actionable under ACN 003/20, the totality of the circumstances must demonstrate that the alleged harassment was so severe or pervasive that a reasonable person would find that it creates a hostile or abusive work environment.

We find it instructive that the recently enumerated offense of sexual harassment under Article 134, UCMJ, mirrors this requirement. Under it, the conduct must be "so severe, repetitive, or pervasive that a reasonable person would perceive, and a certain person did perceive, an intimidating, hostile, or offensive working environment." *Manual for Courts-Martial, United States* (2024 ed.), pt. IV, para. 107a.b.(3)(c) at IV-156. To be clear, the President had not yet enumerated this offense at the time of Appellant's conduct, and she is not charged under this provision. Still, in enumerating offenses under Article 134, the President is not creating substantive criminal law; he is merely listing "examples" of offenses under customary military law. *United States v. Tucker*, 82 M.J. 553, 557 (C.G. Ct. Crim. App. 2022) (citing *United States v. Jones*, 68 M.J. 465, 471–72 (C.A.A.F. 2010)). The presidential enumeration therefore supports that a common understanding of the terms of art used in ACN 003/20 include

a requirement that the conduct be sufficiently severe or pervasive to create an objectively intimidating, hostile, or offensive working environment.

Applying these standards, we conclude there was legally insufficient evidence that Appellant's conduct constituted "sexual harassment" of SN SA within the meaning of ACN 003/20. The evidence establishes a single instance of using the word "slut" to describe a junior enlisted servicemember in a one-on-one locker room conversation with a fellow petty officer. We assuredly do not condone this behavior. Labeling someone in this sexually demeaning manner, as the Government aptly put it in oral argument, is offensive, contrary to administrative policy, and could, in the right circumstances, rise to the level of criminal sexual harassment under the order. Those circumstances, however, are absent here. This was a single instance of uttering an offensive epithet to a third person. When confronted about using the epithet, Appellant acknowledged and, apparently, did not repeat the conduct.

Considering the totality of the circumstances, no reasonable finder of fact could have found Appellant's conduct, though inappropriate and offensive, was sufficiently severe or pervasive to constitute criminal sexual harassment. Accordingly, we set aside the conviction for sexual harassment.

**Sentence Reassessment**

Based on our action on the findings, we must determine whether we can reassess the sentence or whether a rehearing is necessary. We enjoy broad discretion in reassessing sentences. *United States v. Hernandez*, 78 M.J. 643, 647 (C.G. Ct. Crim. App. 2018) (citing *United States v. Winckelmann,* 73 M.J. 11, 15 (C.A.A.F. 2013)). Before we can reassess a sentence, we must be able to "reliably and confidently determine that, absent the error, the sentence would have been at least of a certain magnitude." *Hernandez*, 78 M.J. at 647 (citing *United States v. Buber,* 62 M.J. 476, 479 (C.A.A.F. 2006)). If we cannot do this, we must order a rehearing. *United States v. Harris,* 53 M.J. 86, 88 (C.A.A.F. 2000) (citing *United States v. Poole*, 26 M.J. 272, 274 (C.M.A. 1988)). A reassessed sentence must not only "be purged of prejudicial error[,]" but "also must be 'appropriate' for the offense involved." *United States v. Sales,* 22 M.J. 305, 308 (C.M.A. 1986).

We apply the totality of the circumstances of each case to make sentence reassessment determinations, guided by the following "illustrative, but not dispositive, points of analysis," *Winckelmann,* 73 M.J. at 15:

(1) Whether there have been "[d]ramatic changes in the penalty landscape and exposure." *Id.* at 15–16.

(2) Whether sentencing was by members or a military judge alone. "As a matter of logic, [we] are more likely to be certain of what a military judge would have done as opposed to members." *Id.* at 16.

(3) "Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses." *Id.*

(4) Whether the remaining offenses are of the type that appellate judges "should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Id.*

Considering the totality of the circumstances, we conclude we can reassess the sentence. Although the remaining offenses are unrelated to the sexual harassment offense and therefore do not capture the gravamen of it, the other considerations weigh in favor of sentence reassessment. After setting aside one of four convictions for violating lawful general orders, there is minimal change to the penalty landscape and none to penalty exposure—the maximum punishment is the same: the jurisdictional maximum at a judge-alone special court-martial. Sentencing was by military judge alone and we have the experience and familiarity with offenses of this type to reliably determine what sentence would have been imposed at trial.

We are confident that even without the sexual harassment conviction, the military judge would have imposed the same sentence: reduction to E-5 and a letter of reprimand. As captured by the remaining offenses, Appellant directed subordinates to use official time and government resources for her own personal gain. This was an abuse of power, clearly unethical, and, in our view, more significant than a one-time use of an offensive sexual epithet to a third party that we now determine was not severe or pervasive enough to rise to the level of a criminal offense. Furthermore, we conclude that reduction to E-5 and a letter of reprimand is appropriate for the

remaining offenses and that reducing an already-minimal sentence would only constitute a windfall.

## Decision

The finding of guilty to Specification 4 of Charge I is set aside. The current reprimand, which references the sexual harassment conviction, is set aside. A revised reprimand shall be substituted. We determine that the remaining findings and the sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the remaining findings of guilty and the sentence are affirmed.

Chief Judge McCLELLAND and Judge PELL concur.



For the Court,


Kurt J. Brubaker
Judge